# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

MOONRACER, INC. D/B/A SYNAPTIS,           )
                                          )
                Plaintiff,                )
                                          )        **VERIFIED COMPLAINT AND**
                                          )        **MOTION FOR INJUNCTIVE RELIEF**
v.                                        )        **AND FOR TEMPORARY**
                                          )        **RESTRAINING ORDER**
                                          )
JORDAN N. COLLARD,                        )
                                          )
                Defendant.                )

NOW COMES the Plaintiff, Moonracer, Inc., doing business as Synaptis, by and through
its attorneys, complaining of the Defendant, Jordan N. Collard, and alleges and says the
following:

1.      The Plaintiff Moonracer, Inc. ( "Plaintiff" or the "Plaintiff Synaptis"), doing
business as Synaptis, with all documentation properly filed, is a corporation organized and
existing under the laws of the state of North Carolina, with its principal place of business in
Wake County, North Carolina.

2.      Upon information and belief, the Defendant Jordan N. Collard ("Defendant" or
the "Defendant Collard") is a citizen and resident of Wake County, North Carolina.

3.      The Plaintiff Synaptis is in the business of information technology, as a provider
of software, consulting services and customized blended learning solutions, including UPK
training services, web-based training services, instructor-led training and performance support

systems, including Oracle consulting, support and training. The Plaintiff Synaptis is a developer of human interface solutions which enhance the user experience in the expanding digital world.

4. The Plaintiff Synaptis has obtained the status of an Oracle PartnerNetwork, for Oracle, an entity which offers hardware and software systems. The majority of the business of the Plaintiff Synaptis centers around its proprietary programs and confidential information related to Oracle's User Productivity Kit ("UPK") software. The Plaintiff Synaptis offer services to its clients, including UPK Optimization services, UPK training services, UPK installation, UPK content management and UPK administrator training, among other things, to facilitate the client's immediate and long term success and increase return on investment of Oracle's UPK software.

5. The Plaintiff Synaptis depends on its position in the PartnerNetwork for a business stream, particularly as it relates to UPK and the proprietary training and enablement programs the Plaintiff Synaptis has developed. The Plaintiff Synaptis is one of the only companies that Oracle has designated as "specialized" in UPK services and is referred customers from Oracle because of its unique status as an industry leader with the niche market in the design development and delivery of UPK services. The Plaintiff Synaptis has a legitimate business interest in protecting the training programs and methodologies it created and the marketing of such proprietary information. A copy of the proprietary promotional materials produced and utilized by the Plaintiff Synaptis are attached hereto as Exhibit A - C and incorporated herein by reference as if set forth and alleged in full.

6. The Plaintiff Synaptis has developed certain installation, training and enablement programs, strategies, methodologies and materials relating to UPK that are unique and proprietary to the Plaintiff Synaptis, beyond the instructions from Oracle relating to UPK

product, as well as a specific marketing program related to Oracle's PartnerNetwork and independently.

7.    The Defendant Collard was employed by the Plaintiff Synaptis from on or about September 28, 2009, until on or about April 15, 2013. During this time period, the Defendant Collard was employed by the Plaintiff Synaptis as a Vice President of Sales, responsible for business development.

8.    The Defendant's duties and responsibilities included:

a)    direct responsibility for the generation of company's revenue;

b)    developing plans and strategies for developing business and achieving the company's sales goals;

c)    managing the use of budgets;

d)    managing the sales teams, operations and resources to deliver profitable growth;

e)    defining and overseeing incentive programs to motivate the sales team to achieve their sales targets;

f)    defining and coordinating sales training programs, including UPK, to enable staff to achieve their potential and support company sales objectives;

g)    exceeding customer expectations and contributing to a high level of customer satisfaction;

h)    hiring and developing sales staff;

i)    providing detailed and accurate sales forecasting;

j)    putting in place infrastructure and systems to support the success of the sales function;

k)    compiling information and data related to customer and prospect interactions;

l)    monitoring customer, market and competitor activity and providing feedback to company leadership team and other company functions;

m)    working closely with the marketing function to establish successful channel and partner programs;

n)    managing key customer relationships and participate in closing strategic opportunities;

o)    traveling for in-person meetings with customers and partners and to develop key relationships; and

p)    managing partner relationships, most specifically the Oracle UPK product management team, and associated Oracle sales team.

9.    As a Vice President, the Defendant Collard had access to confidential business and/or technical information regarding the Plaintiff Synaptis and its business, which was at all times proprietary to the Plaintiff Synaptis and considered confidential and was to be protected by

the Defendant Collard, including, but not limited to ideas and concepts, customers, personnel, marketing, pricing, accounting and financial information, trade secrets and trademarks, specifications, reports, proposals, source or object code, training, training programs on how to use UPK, marketing of UPK and specific training tools and know-how.

10.     On or about September 28, 2009, for good and valuable consideration, including employment, the Defendant Collard executed Special Terms and Conditions of Employment (the "Agreement"). A true and accurate copy of the Agreement is attached hereto as Exhibit D and incorporated herein by reference as if set forth and alleged in full.

11.     The Defendant Collard was terminated from employment for cause with the Plaintiff Synaptis on or about April 15, 2013. An Exit Interview was conducted and all amounts due and payable to the Defendant Collard as compensation for his employment with the Plaintiff Synaptis have been paid.

12.     In conjunction with his termination, the Plaintiff Synaptis provided the Defendant Collard with a letter from its counsel, attaching a copy of the Agreement, to provide notice of Defendant Collard's obligations under the Agreement and notice of the Plaintiff Synaptis' intent to enforce the Agreement. A copy of the letter is attached hereto as Exhibit E and incorporated herein by reference as if set forth and alleged in full.

13.     Prior to joining the Plaintiff Synaptis, the Defendant Collard had no appreciable knowledge or expertise with Oracle's UPK software, including UPK Optimization services, UPK training services, UPK installation, UPK content management and UPK administrator training, or UPK marketing. A copy of the Defendant Collard's resume and application at the time of his initial employment is attached hereto as Exhibit F and incorporated herein by reference as if set forth and alleged in full.

14.     Because of the nature of the proprietary and confidential information the Plaintiff Synaptis utilizes to train its customers on Oracle's UPK software and to market and sell such services, which the Defendant Collard learned through his employment with the Plaintiff Synaptis, the Defendant would necessarily use the Synaptis Information defined in the Agreement to train and market the same product for a competitor and disclosure of the Synaptis information is inevitable.

15.     Sections 1, 2 and 3 of the Agreement prohibit the disclosure and use by the Defendant of certain confidential and/or technical information regarding Synaptis and its business. Section 1 provides in part:

> Employee is aware that while performing services on behalf of Synaptis, Employee may obtain confidential business and/or technical information regarding Synaptis and its business (Synaptis Information). All Synaptis Information is at all times proprietary to Synaptis and considered confidential and shall be preserved and protected by Employee. Synaptis Information includes but is not limited to ideas and concepts, customers, personnel, marketing, pricing, accounting and financial information, trade secrets and trademarks, specifications, reports, proposals, source or object code, and know-how, whether or not marked as confidential.

16.     Section 9 of the Agreement contains certain non-competition and non-solicitation restrictions ("Restrictive Covenants"), including the following:

> (a)     Employee: (i) will not accept employment with a business which competes with Synaptis' Business if such employment will require Employee to engage in actions similar to those actions undertaken by Employee in the course and scope of Employee's employment with Synaptis, and if such actions would draw upon specialized training received at Synaptis, utilize specialized skills developed at Synaptis, draw upon Synaptis' goodwill, draw upon industry or current or potential customer contacts developed at Synaptis, or utilize procedures developed by Synaptis; and (ii) will not accept employment with a business which competes with Synaptis' Business if such employment will require Employee to engage in actions similar to those actions undertaken by Employee in the course and scope of Employee's employment with Synaptis; and (iii) will not engage in, or take action for the purpose of enabling Employee to engage in, either as an individual, employee, consultant, independent contractor, advisor, or

otherwise, or be interested in (as present or prospective owner, partner, investor, shareholder (except in a publicly traded company), advisor, or otherwise), a business which engages in or competes with Synaptis' Business, except that Employee may be employed by such a competing business provided that Employee does not work in the section or division of the competing business which competes with Synaptis' Business and that such employment shall not require a breach of the Nondisclosure and Nonuse requirements of this Agreement.

(c)    Employee will not, either individually or through any other person or entity, solicit, influence, or attempt to influence any customer (licensee) or potential customer (licensee) of Synaptis with regard to the customer's purchase (or licensing) of software or services from Synaptis (or from any competing business offering the same or substitutable products or services) if such entity was a customer (licensee) or prospective (under negotiation) customer (licensee) within the six months period immediately prior to Employee's termination, and (ii) within the seventh through twelfth month prior to Employee's termination nor shall Employee take any action detrimental to the existing or prospective relationships between Synaptis and any customer or potential customer.

17.    The Restrictive Covenants are no wider in scope than is necessary to protect the business of the Plaintiff Synaptis and protect a legitimate business of the Plaintiff Synaptis. The nature of the business of the Plaintiff Synaptis is web-based, meaning that access to a computer in any location allows for the provision of consulting and training services, UPK enabling and training and performance support.

18.    The non-competition provision of the Agreement forbids the Defendant Collard from accepting employment with a business which competes with the business of the Plaintiff Synaptis, if such employment will require the Defendant Collard to engage in actions similar to those actions undertaken in the course and scope of his employment with the Plaintiff Synaptis, for a term of one year after termination of employment, within a fifty mile radius of the corporate headquarters of the Plaintiff Synaptis and a twenty mile radius of all cities where the Plaintiff Synaptis has contracted to do business or has contracts for software licenses or services under negotiation and within the United States.

19.     IT Convergence is a global enterprise application provider with core competencies in Oracle consulting, support and training.  Upon information and belief, the Defendant Collard is currently employed by IT Convergence, a direct competitor with the Plaintiff Synaptis, particularly with regard to Oracle UPK.  Upon information and belief, IT Convergence identified and recruited the Defendant Collard because of the unique knowledge of Synaptis Information disclosed or accessible to the Defendant Collard during his employment with the Plaintiff Synaptis.

20.     The Defendant Collard was originally hired as a Business Development Manager. A copy of his on-line profile identifying him as a Business Development Manager for IT Convergence is attached hereto as Exhibit G and incorporated herein by reference as if set forth and alleged in full.

21.     Upon discovery of such potential employment, the Plaintiff Synaptis notified IT Convergence of the existence of the Agreement and provided a copy of the Agreement to IT Convergence, as provided for in paragraph 13 of the Agreement.  A copy of the letter sent by counsel for the Plaintiff Synaptis to the President of IT Convergence is attached hereto as Exhibit H and incorporated herein by reference as if set forth and alleged in full.

22.     The President of IT Convergence confirmed that the Defendant Collard had been offered employment and offered to negotiate a compromise.

23.     As no compromise was reached, the President of IT Convergence confirmed on May 21, 2013, that the Defendant Collard is employed by IT Convergence and that "[h]e will be training recent college grads on how to use UPK.  He will be working with our marketing department on how to sell UPK per Oracle's recommended use cases." Such activity necessarily requires the Defendant Collard to draw on the know-how, materials, confidential and/or technical

information derived from the Plaintiff Synaptis. A copy of the e-mail string with the President of IT Convergence is attached hereto as Exhibit I and incorporated by reference as if set forth and alleged in full.

24.     As part of his employment with the Plaintiff Synaptis, the Defendant Collard was Quest Special Interest Group ("SIG") President and an Oracle Applications Users Group ("OAUG") UPK member. These positions were made available to the Defendant Collard as an employee of the Plaintiff Synaptis through the actions and position of the Plaintiff Synaptis. Having an employee in such positions is intended to and, in fact, does benefit the Plaintiff Synaptis.

25.     Upon information and belief, the Defendant Collard, has continued with these positions as Quest SIG President and OAUG UPK, which is detrimental to the existing or prospective relationships between the Plaintiff Synaptis and its employees and future employees, customers and potential customers, and its provision of services or products.

26.     As set forth above, the Defendant Collard has violated his Agreement and is in breach thereof and has breached his legal obligations to the Plaintiff Synaptis.

### FIRST CLAIM FOR RELIEF
### Breach of Contract as to Defendant Collard

27.     The allegations contained in Paragraphs 1 through 26 set out above are re-alleged and incorporated by reference herein.

28.     For valuable consideration, and prior to commencing employment with Plaintiff Synaptis, the Defendant Collard read and signed the Agreement which contained confidentiality and non-disclosure provisions and other Restrictive Covenants.

29.     The Agreement is a valid and binding contract between the Plaintiff Synaptis and the Defendant Collard.

30.     The Agreement was supported by adequate consideration, and the terms therein, including the confidentiality and non-disclosure provisions and other Restrictive Covenants were essential and bargained-for pre-conditions to employment and continued employment and are reasonable as to the time period and territory covered by such restrictions.

31.     The Defendant Collard agreed in the Agreement generally that he would not solicit, nor disclose proprietary and confidential information, nor compete with the Plaintiff Synaptis, nor cause the Plaintiff Synaptis' customers or prospective customers to refrain from patronizing the Plaintiff Synaptis.

32.     The Plaintiff Synaptis, through counsel, communicated in writing with the Defendant Collard, notifying him of the obligations under the Agreement and demanding that he not violate of the restrictions contained in the Agreement.

33.     Upon information and belief, the Defendant Collard is in violation of the Agreement with the Plaintiff Synaptis as of the date of the filing of this Complaint.

34.     By his acts and omissions, the Defendant Collard has caused and will cause the Plaintiff Synaptis to suffer irreparable harm and/or alternatively damages to be proven at trial, in an amount in excess of Ten Thousand and No/100's Dollars ($10,000.00), plus interest and attorneys' fees and expenses.

## SECOND CLAIM FOR RELIEF
### Preliminary and/or Permanent Injunction

35.     The allegations contained in Paragraphs 1 through 34 set out above are re-alleged and incorporated by reference herein.

36.     The confidentiality and non-disclosure provisions and other Restrictive Covenants contained in the Agreement are valid and binding restrictions upon the Defendant Collard, were bargained for, and are supported by adequate consideration.

37.     The Restrictive Covenants contained within the Agreement are reasonable as to time and territory, and designed to protect a legitimate business interest of the Plaintiff Synaptis.

38.     The Defendant Collard has, upon information and belief, violated the Restrictive Covenants contained within the Agreement and the confidentiality and non-disclosure provisions, as he is employed by a direct competitor of the Plaintiff Synaptis and is competing with the Plaintiff Synaptis in violation of the Agreement, utilizes proprietary and confidential materials of the Plaintiff Synaptis and has contacted Oracle, Oracle partners and participated in the Quest Special Interest Group ("SIG") as President and an Oracle Applications Users Group ("OAUG") UPK member originally secured on behalf of Plaintiff Synaptis, among other things, during the time period and in the geographical area or client-based restriction prohibited by the Agreement.

39.     Paragraph 2 of the Agreement states:  "Employee agrees to hold in strict confidence any existing or prospective Synaptis Information disclosed or accessible to Employee by or on behalf of Synaptis during the course of Employee's work..."

40.     Paragraph 15 of the Agreement states in bold print:  "...Employee agrees that the terms of this Agreement are fair and are reasonably required for the protection of the interest of Synaptis and its shareholders.  Employee further agrees that the restrictions and covenants of this Agreement will not impair the ability of the Employee to secure employment so as to make a reasonable living..."

41.     The Plaintiff Synaptis has no adequate remedy at law to prevent or redress the damage suffered by it as a result of the past, present and future violations of the Agreement by the Defendant Collard, and the Plaintiff Synaptis is entitled to a preliminary

injunction/permanent injunction precluding further actions by the Defendant Collard in violation thereof.

42.     The Agreement provides that the term of the Restrictive Covenants shall be tolled during any period of actual competition by the Defendant Collard and/or any period of litigation required to enforce the obligations under the Agreement.

43.     The Defendant Collard should be required to provide one full year of non-solicitation, non-competition and non-disclosure to the benefit of the Plaintiff Synaptis, so that the Plaintiff Synaptis may enjoy the benefit of its bargain.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

44.     The allegations contained in Paragraphs 1 through 43 set out above are re-alleged and incorporated by reference herein.

45.     The wrongful acts and omissions of the Defendant Collard, individually and by and through IT Convergence, as alleged above, are causing and will continue to cause immediate and irreparable injury, loss and damage to the Plaintiff Synaptis, and no adequate relief is possible nor an adequate remedy available at law other than the injunctive relief sought herein.

46.     The Defendant's wrongful acts, unless temporarily, preliminarily and permanently enjoined, will continue and will produce permanent and irreparable injury to the Plaintiff Synaptis and its business.

47.     The Plaintiff is entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting the Defendant Collard from violating the Agreement.

WHEREFORE, the Plaintiff Synaptis respectfully prays the Court as follows:

1.  That its Motion for Temporary Restraining Order and Preliminary Injunction be granted;

2.  That a temporary restraining order/preliminary injunction/permanent injunction issue requiring that the Defendant Collard cease his current employment with IT Convergence, or alternatively to enforce the covenants regarding confidentiality, non-competition, non-solicitation, for a period of one year from the date of such injunction as set forth in the Agreement and that the Defendant Collard cease his Quest Special Interest Group ("SIG") Presidency and his Oracle Applications Users Group ("OAUG") User Productivity Kit ("UPK") membership;

3.  Alternatively, for an award of money damages against the Defendant Collard in an amount in excess of Ten Thousand and No/100's Dollars ($10,000.00);

4.  For an award of reasonable legal fees and costs incurred by the Plaintiff in the enforcement of the Agreement between the parties;

5.  That the Court accept this Verified Complaint and Motion for Injunctive Relief as well as the Motion for Temporary Restraining Order and Preliminary Injunction as an Affidavit;

6.  For such other and further relief as the Court, in its discretion, deems just and proper.

This the _23rd_ day of May, 2013

JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC

By: _____

Paul T. Flick
N.C. State Bar No. 13494
pflick@jordanprice.com
Lori P. Jones
N.C. State Bar No. 32872
ljones@jordanprice.com
Post Office Box 10669
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
*Attorneys for Plaintiffs*

STATE OF NORTH CAROLINA                    VERIFICIATION

COUNTY OF WAKE


Brad Mullahy, being first duly sworn, deposes and says that he is the CEO and authorized

agent of the Plaintiff Synaptis in this action; that he has read the foregoing Complaint, and that

the same is true of his own knowledge, except as to matters and things herein stated upon

information and belief, and as to those matters and things he believes them to be true.



Brad Mullahy


Sworn to and subscribed before me

this 23nd day of May, 2013.

Hettie M. Massey
Notary Public

My Commission Expires: 1-22-16





PARTNERNETWORK

## Synaptis UPK Optimization Program



www.synaptis.com

### Synaptis UPK Advantages

➤ **Faster Development –** Synaptis resources are more efficient while creating more effective training content and getting your developers up to speed

➤ **Reduced Costs –** Our experience helps reduce your curriculum development, support, and post go-live costs by implementing a full UPK strategy and solution

➤ **Effective Training –** We develop customized training materials that answer how and why

➤ **Stability –** Our Company has designed, developed and delivered customized end-user training for many large-scale organizations and rollouts since 1999 and will transfer our knowledge to make sure at the conclusion you are "self sufficient."



EXHIBIT

A

## Synaptis UPK Optimization and Training Programs

To facilitate the immediate and long term success and increase return on investment of Oracle's UPK software, Synaptis proposes the following services to enable you to effectively implement proven methodologies, best practices, training, and leverage the power of UPK.

## UPK Optimization Services

Optimizing UPK requires insuring that the software is installed and implemented appropriately to meet the needs of the company. It requires developing strategies for content management including the library structure, developer profiles, and styles and standards. Synaptis will insure that the UPK environment is optimized by performing the following services:

1. **UPK Health Check**
2. **UPK Installation (if required based on health check)**
3. **UPK Content Management Strategy**

## UPK Training Services

Oracle's UPK is a robust tool with many rich features and functions. Synaptis will provide the following training services to enable developers and administrators to maximize the efficiency and effectiveness of their use and management of UPK.

1. **Developer Training**
2. **Administrator Training**

## Synaptis UPK Optimization

### 1) UPK Health Check

Consultant will provide consultation to assist in assessing the current UPK processes, structure, and plans for future UPK projects. Consultant will also provide a determination of the best ways to leverage UPK to its fullest in agreement with the Oracle contract. These services include:

- Assessment of installation, backup, development, QA, publishing and deployment approach, to ensure that an effective process had been established for the use of UPK and the distribution of its outputs.
- Assessment of the UPK strategy and sustainability for application implementation
- Evaluation of content structure to ensure the quality and consistency of deliverables and identify opportunities for improvement and time saving
- Assessment of project plans, timelines, transaction list and role matrices, as appropriate
- Review of existing UPK content and UPK curriculum outlines and topics

150 Cornerstone Drive, Cary, NC 27519 Suite 201 | Phone 919-844-5840 | Fax 919-844-5844 | www.synaptis.com

150 Cornerstone Drive, Cary, NC 27519 Suite 201 | Phone | 919-844-5840 | Fax | 919-844-5844 | www.synaptis.com

### 2) UPK Installation

Synaptis may provide a new installation of Oracle UPK based on the initial health check determination. UPK installation activities include:

- Preparation of new UPK environment
- UPK technical software installation
- Testing for Technical and Functional stability

### 3) UPK Content Management Strategy

Synaptis will provide consultation to assist in constructing the UPK Library and managing developer profiles. A strategy for content management will be determined based on the needs and the number of developers that will be using the tool. The strategy will include:

1. **Library Structure –** Synaptis will assess the type of content that you will be developing, how you will develop the content, and who is responsible for maintaining the content. Based on that assessment, a strategy for library structure will be suggested that will enable you to organize your content in the UPK Library. This will set a standard for the developers to follow and allow your company to use the strategy going forward for new projects, training, and/or localization.

2. **Developer Profiles –** Synaptis will assist in setting up the developer profiles and enable you to take advantage of the security options available in UPK's multi-user environment. Using the permissions aspect of developer profiles allows you to specify the areas of the library to which a developer has read access, write access, or no access.

3. **Standards & Styles Guide-** Synaptis will develop a Standards & Style Guide to ensure a consistent development methodology for UPK topics. It is important to have a consistent look and feel for UPK topics when deploying them throughout your company.

## Synaptis Training Programs

### 1) UPK Developer Training

This is a UPK developer basics course delivered by a UPK trainer. In addition to UPK training, time is also devoted to independent practice, guided development, peer-to peer learning, and one-on-one consulting. Highlights of this course include:

- Deep dive into UPK capabilities for content creation
- Hands on exercise and activities
- UPK Instructors that are also UPK Content Developers
- Up to twelve (12) participants which will allow for large group and individual consulting
- Learners Workbook

### 2) UPK Administrator Training

The UPK Administrator training is a course for the administrators of UPK who will be responsible for managing and owning the UPK tool. Topics include:

- Folder Relationships
- Testing vs. Production
- Publishing & Deploying Content
- Approvals
- Shared Folders ( Groups, Roles, Permissions)

## Cost Proposal

| Synaptis Service | Rate | Cost Proposal |
|---|---|---|
| UPK Optimization Program | | |
| UPK Training | | |

150 Cornerstone Drive Cary, NC 27519 Suite 201 | Phone | 919-844-5840 | Fax | 919-844-5844 | www.synaptis.com





**PARTNERNETWORK**

## Synaptis UPK Service Options



www.synaptis.com

### Synaptis UPK Advantages

➤ **Faster Development –** Synaptis resources are more efficient while creating more effective training content and getting your developers up to speed

➤ **Reduced Costs –** Our experience helps reduce your curriculum development, support, and post go-live costs by implementing a full UPK strategy and solution

➤ **Effective Training –** We develop customized training materials that answer how and why

➤ **Stability –** Our Company has designed, developed and delivered customized end-user training for many large-scale organizations and rollouts since 1999 and will transfer our knowledge to make sure at the conclusion you are "self sufficient."



EXHIBIT
B

## UPK Consulting Options

Synaptis Consultants may provide the following UPK consulting services:

- Help develop an end user training strategy for application implementation or sustainability leveraging the use of UPK
- Evaluate UPK content structure and identify opportunities for improvement and time-savings
- Review development, editing, QA, publishing and deployment approach, to ensure that an effective process has been established around the use of UPK
- Develop project plans, timelines, transaction lists and role matrices
- Offer guidance to develop UPK topics which are similar in size to make the simulation easier for users to comprehend
- UPK Project Research
- WorkFlow and Business Process Research
- UPK Published Classroom Materials Assessment (Optional based on client's needs)
- Review Existing Documentation (Test Scripts, PPT, Business Process Flows, etc.)
- Interviews
  - **Deliverables may include:**
    - ✓ **UPK Development Project Plan**
    - ✓ **UPK Topic Outline**
    - ✓ **UPK Development Styles & Standards Guide**

Synaptis Consultants shall leverage UPK to develop modular training curriculum to support project applications and Business Processes.

- **Deliverables may include:**
  - ✓ **UPK Curriculum Outline**
  - ✓ **UPK Content BETA version**
  - ✓ **UPK Content FINAL version**
  - ✓ **UPK E-Learning Player Mode (See It, Try It, Know It)**
  - ✓ **Custom Scenarios & Development for Try It Mode Assessment(s)**
  - ✓ **Trainers Guides, Classroom Guides, Exercise Workbooks, Job Aids**
  - ✓ **Performance Support (Do It Player Mode)**

## Cost Proposal

| Synaptis Service | Deliverables | Cost Proposal |
|---|---|---|
| **UPK Consulting** | Experienced UPK Consultant(s) to develop Customized UPK Content or Customize UPK Pre-Built Content. UPK Consultant may also provide UPK consulting as needed. | |

150 Cornerstone Drive Cary, NC 27519 Suite 201 | Phone| 919-844-5840 |Fax| 919-844-5844 | www.synaptis.com





ORACLE
PARTNERNETWORK

# Synaptis UPK Enablement Program



www.synaptis.com

## Synaptis UPK Advantages

➢ **Faster Development –** Synaptis resources are more efficient while creating more effective training content and getting your developers up to speed

➢ **Reduced Costs –** Our experience helps reduce your curriculum development, support, and post go-live costs by implementing a full UPK strategy and solution

➢ **Effective Training –** We develop customized training materials that answer how and why

➢ **Stability –** Our Company has designed, developed and delivered customized end-user training for many large-scale organizations and rollouts since 1999 and will transfer our knowledge to make sure at the conclusion you are "self sufficient."



EXHIBIT
C

## Synaptis UPK Enablement Program

To facilitate the immediate and long term success and increase return on investment, Synaptis has developed a list of UPK services to enable you to effectively implement proven methodologies, best practices, training, and leverage the power of UPK.

The UPK Enablement Services Include:

1. **UPK Content Management Strategy**
2. **UPK Training (Two Classes)**
   - **Developer Training**
   - **Administrator Training, to include Knowledge Center**

## UPK Content Management Strategy

Synaptis will provide consultation to assist in constructing the UPK Library and managing developer profiles. A strategy for content management will be determined based on the needs and the number of developers that will be using the tool. The strategy will include:

1. **Library Structure** – Synaptis will assess the type of content that you will be developing, how you will develop the content, and who is responsible for maintaining the content. Based on that assessment, a strategy for library structure will be suggested that will enable you to organize your content in the UPK Library. This will set a standard for the developers to follow and allow your company to use the strategy going forward for new projects, training, and/or localization.

2. **Developer Profiles** – Synaptis will assist in setting up the developer profiles and enable you to take advantage of the security options available in UPK's multi-user environment. Using the permissions aspect of developer profiles allows you to specify the areas of the library to which a developer has read access, write access, or no access.

3. **Standards & Styles Guide-** Synaptis will develop a Standards & Style Guide to ensure a consistent development methodology for UPK topics. It is important to have a consistent look and feel for UPK topics when deploying them throughout your company.

## UPK Developer Training (to include Knowledge Center)

This is a UPK developer basics course delivered by a UPK trainer. This course offers 3 days of training. In addition to UPK training, time is also devoted to independent practice, guided development, peer-to-peer learning, and one-on-one consulting. Highlights of this course include:

- o Deep dive into UPK capabilities for content creation
- o Hands on exercise and activities
- o UPK Instructors that are also UPK Content Developers

150 Cornerstone Drive  Cary, NC 27519 Suite 201 | Phone| 919-844-5840  |Fax| 919-844-5844 | www.synaptis.com

- o   Up to twelve (12) participants which will allow for large group and individual consulting
- o   Learners Workbook
- o   Install Content and Create knowledge paths
- o   Create Users and Usergroups
- o   Assign Users to Usergroups
- o   Enroll Users and Usergroups into a Knowledge Path
- o   Use Expert Advice, Ask a Question, Review Feedback, and the Notebook
- o   Create and Use Reports

## UPK Administrator Training

The UPK Administrator training is a course for the administrators of UPK who will be responsible for managing and owning the UPK tool.  This course offers a ½ day of training.  Topics Include:

- o   Folder Relationships
- o   Testing vs. Production
- o   Publishing & Deploying Content
- o   Approvals
- o   Shared Folders ( Groups, Roles, Permissions)

150 Cornerstone Drive  Cary, NC 27519 Suite 201 | Phone | 919-844-5840  |Fax| 919-844-5844 | www.synaptis.com

## Cost Proposal

| Synaptis Service | Deliverables | Cost Proposal |
|---|---|---|
| **UPK Content Management Strategy** | Setup Library Structure<br>Secure Developer Profiles<br>Standards & Styles Guide | |
| **UPK Developer Training (Professional)** | UPK 11.1 Developer Training | |
| **UPK Administrator Training** | UPK Administrator Training (to include Knowledge Center) | |

150 Cornerstone Drive Cary, NC 27519 Suite 201 | Phone | 919-844-5840 | Fax | 919-844-5844 | www.synaptis.com



synaptis

Learn | Perform | Excel

## MOONRACER, INC. (DBA) SYNAPTIS
## SPECIAL TERMS AND CONDITIONS OF EMPLOYMENT

This Agreement is made between Moonracer Inc. (dba) Synaptis with a principal place of business at 150 Cornerstone Drive, Suite 201, Cary, North Carolina 27519 (Synaptis), and Jordan Collard, residing at 843 W. Leland Ave. Unit 2, Chicago, IL 60640 ("Employee").

This Agreement is based on the following understandings:

A.     Synaptis wishes to employ Employee and Employee desires to be employed by Synaptis in a position of trust and confidence to aid Synaptis in its Business;

B.     Prior to employment of Employee, as a condition of employment, and as part of the initial financial compensation established for Employee, the Parties wish to establish their respective rights in, and to the use of, certain proprietary and confidential information and intellectual property, and to enter into an understanding regarding the use of Synaptis assets, and information;

C.     Synaptis has informed Employee that entering into this Agreement is a condition of initial employment and Synaptis would not employ Employee unless Employee agreed to the terms herein; ·

D.     Nothing contained in this Agreement shall be deemed to give Employee the right to be employed by Synaptis for any specific length of time or at any specific wage, it being understood that this Agreement is ancillary to the understandings between Synaptis and Employee related to compensation,         benefits,         and         other         terms         of         employment;         and

Therefore, the Parties to this Agreement, affirming the correctness of each recital above, contract and agree as follows:

1.     Employee is aware that while performing services on behalf of Synaptis, Employee may obtain confidential business and/or technical information regarding Synaptis and its business (Synaptis Information).  All Synaptis Information is at all times proprietary to Synaptis and considered confidential and shall be preserved and protected by Employee.  Synaptis Information includes but is not limited to ideas and concepts, customers, personnel, marketing, pricing, accounting and financial information, trade secrets and trademarks, specifications, reports, proposals, source or object code, and know-how, whether or not marked as confidential.

2.     Employee agrees to hold in strict confidence any existing or prospective Synaptis Information disclosed or accessible to Employee by or on behalf of Synaptis during the course of Employee's work and in perpetuity thereafter.  Employee will not disclose such Synaptis Information to any person or business entity other than those persons who have been identified to Employee by Synaptis as persons who may receive it.  Employee further agrees not to use any Synaptis Information except as necessary to perform Employee's services.  On or before Employee's last day of employment with Synaptis, Employee shall return to the Employer the originals and all copies of all Synaptis Information provided to or acquired by Employee and shall also return to Synaptis all files, correspondence and other communications received, maintained and/or originated by Employee.

3.     Employee understands that all Synaptis Information, and all other work materials in any format or medium created wholly or in part by Employee for Synaptis or a Business Partner, or using

EXHIBIT
D

Synaptis' facilities or money, whether or not during Employee's work hours, are Works Made for Hire (Works) under the copyright laws. The Works, and all other materials and trademark rights relating to Synaptis and its Business Partners are and will remain their exclusive property. Upon termination of Employee's services, Employee agrees to return all Works and all Synaptis Information in Employee's possession (including electronic files).

4.      For a period of one year after termination of employment with Synaptis, Employee will not, either individually or through any other person or entity, solicit, influence, or attempt to influence, any customer or potential customer of Synaptis with regard to the customer's purchase or licensing of software or services from Synaptis (or from any competing business offering the same or substitutable products or services) if such entity was a customer licensee or prospective customer (under negotiation) within the six month period immediately prior to Employee's termination, nor shall Employee take any action detrimental to the existing or prospective relationships between Synaptis and any customer or potential customer.

5.      If any provision of this Agreement shall for any reason be adjudged by any court of competent jurisdiction to be illegal, invalid or otherwise unenforceable, such judgment shall not affect, impair or invalidate the remainder of this Agreement but shall be confined in its operation to the provision of this Agreement directly involved in the controversy in which such judgment shall have been rendered. The invalid or unenforceable provision shall be reformed so that each party shall have the obligation to perform reasonably alternatively to give the other party the benefit of its bargain. In the event the invalid or unenforceable provision cannot be reformed, the other provisions or applications of this Agreement shall be given full effect, and the invalid or unenforceable provision shall be deemed struck.

6.      This Agreement shall inure to the benefit of and be binding upon Synaptis, its successors and assigns, including without limitation any entity which may acquire all or substantially all of Synaptis' assets and business or into which Synaptis may be consolidated or merged, and the Employee, his/her heirs, executors, administrators and legal representatives. Employee may not assign any of his obligations under this Agreement.

7.      This Agreement shall be governed by and construed in accordance with the laws of North Carolina applicable to contracts between residents of North Carolina which are wholly executed and performed in North Carolina, and no conflict-of-laws provision shall be invoked to permit the laws of any other state or jurisdiction. Any lawsuit brought under the terms of this Agreement shall have exclusive venue in the state and federal courts of Wake County, North Carolina; provided, however, that with respect to any proceeding for injunctive relief Synaptis may, at its sole option, bring the proceeding before a court where Employee resides at the time of such proceeding.

8.      Synaptis' Business. It is understood by Employee that "Synaptis' Business" includes, without limitation:

(a)     performing needs assessments for Training;

(b)     designing and developing job aides, exercise templates, teaching guides (instructor, coaching and self-study), "classrooms in- a-kit" and other materials for use in Training, including without limitation all content, structure, formatting, use of links and graphics;

(c)     creating (designing, editing, coding, debugging and testing), enhancing, maintaining and updating computer software (computer code packaged as utilities, tools, libraries, interfaces, mechanisms, standards, procedures, objects, and methods) used primarily but not exclusively for on-line Training;

(d)     evaluating Training materials and programs; and

(e)     providing Training classes and workshops, including without limitation for Training trainers.

Any notification of Employee by Synaptis, oral or written, or any reasonable knowledge on the part of Employee that Synaptis' Business includes other specific aspects shall expand Employee's obligations under this Agreement to include these additional aspects of Synaptis' Business. For the purposes of defining Synaptis' Business, "Training" shall mean training in the use of computer applications and systems, unless the training provided by Synaptis shall be expanded to include other areas in which case this definition shall be similarly expanded .

9.      Non-Competition. Employee will obtain access to Synaptis' Confidential Information and goodwill immediately or within a very short period of time after commencement of employment, which Confidential Information and goodwill can be used to provide Employee with an unfair advantage if used to

compete against Synaptis. Employee recognizes that Synaptis has invested and intends to invest substantial amounts of money and other resources to place Synaptis in a position as a member of a premiere organization in the areas of Synaptis' Business, that Employee by reason of Employee's affiliation with Synaptis will acquire a high stature and goodwill in the industry related to Synaptis' Business, and that it would be unfair for Employee to trade on this stature and goodwill to the competitive disadvantage of Synaptis. Employee further acknowledges that the nature of Synaptis' Business results in activities and customers located throughout the United States and the world. Synaptis' Business could be performed and its goodwill used in any location in the United States or the world; the fact that a customer or employee is not currently located in that city or state does not mean that the undertaking of activities by Employee in the city or state in competition with Synaptis' Business would have a different impact than undertaking of the activity in a city or state where customers or employees are located. The Parties also recognize that it is the intent of Synaptis, to the fullest extent permitted by law, to protect the unique aspects of Synaptis' Business and to prevent specialized knowledge, skills and relationships acquired by Employee during the course of Employee's employment with Synaptis from being used in a manner that interferes with Synaptis' goodwill or customer relations or gives an unfair advantage to the former Employee and/or Employee's new employer, or places Employee or the new employer in an unfair competitive position. Employee recognizes that in order to protect the legitimate business interests of Synaptis and the investments of its shareholders, it is reasonable and necessary for Employee to restrict certain of Employee's actions during Employee's employment and for the period of time after the date of Employee's termination of employment as specified below. Therefore Employee agrees as follows:

(a)     Employee: (i) will not accept employment with a business which competes with Synaptis' Business if such employment will require Employee to engage in actions similar to those actions undertaken by Employee in the course and scope of Employee's employment with Synaptis, and if such actions would draw upon specialized training received at Synaptis, utilize specialized skills developed at Synaptis, draw upon Synaptis' goodwill, draw upon industry or current or potential customer contacts developed at Synaptis, or utilize procedures developed by Synaptis; and (ii) will not accept employment with a business which competes with Synaptis' Business if such employment will require Employee to engage in actions similar to those actions undertaken by Employee in the course and scope of Employee's employment with Synaptis; and (iii) will not engage in, or take action for the purpose of enabling Employee to engage in, either as an individual, employee, consultant, independent contractor, advisor, or otherwise, or be interested in (as present or prospective owner, partner, investor, shareholder (except in a publicly traded company), advisor, or otherwise), a business which engages in or competes with Synaptis' Business, except that Employee may be employed by such a competing business provided that Employee does not work in the section or division of the competing business which competes with Synaptis' Business and that such employment shall not require a breach of the Nondisclosure and Nonuse requirements of this Agreement.

(b)  Employee will not, either individually or through any other person or entity: (i) employ or seek to employ, in any business competitive with Synaptis' Business, any person who is currently an employee of Synaptis or an independent contractor engaged in the provision of services for Synaptis, or who becomes an employee or independent contractor during Employee's employment with Synaptis; and (ii) employ or seek to employ, in any business competitive with Synaptis 's Business, any person who was an employee of Synaptis or an independent contractor engaged in the provision of services for Synaptis within six months prior to the termination of Employee's employment with Synaptis; and (iii) employ or seek to employ, in any business competitive with Synaptis' Business, any person who was an employee of Synaptis or an independent contractor engaged in the provision of services for Synaptis within seven to twelve months prior to the termination of Employee's employment with Synaptis; and (iv) will not knowingly take any action detrimental to the relationship between Synaptis and its present and future employees or independent contractors.

(c)  Employee will not, either individually or through any other person or entity, solicit, influence, or attempt to influence any customer (licensee) or potential customer (licensee) of Synaptis with regard to the customer's purchase (or licensing) of software or services from Synaptis (or from any competing business offering the same or substitutable products or services) if such entity was a customer (licensee) or prospective (under negotiation) customer (licensee) within the six months period immediately prior to Employee's termination, and (ii) within the seventh through twelfth month prior to Employee's termination nor shall Employee take any action detrimental to the existing or prospective relationships between Synaptis and any customer or potential customer.

(d)     Employee will not, either individually or through any other person or entity, solicit, influence, or attempt to influence any provider of services or products to Synaptis, with regard to the provision of services or products to Synaptis, nor shall Employee do so with respect to any person or entity which has been a provider of services or products to Synaptis within the last six months prior to Employee's termination, nor shall Employee take any action detrimental to the existing or prospective (under negotiation) relationships between Synaptis and any provider of services or products.

(e)  The term of the restrictions specified in this Paragraph 9 is one year after termination of employment.  The term specified in this Subparagraph (e) shall be tolled during any period of actual competition by the Employee and/or any period of litigation required to enforce the Employee's obligations under this Agreement.

(f)  The geographic scope of the restriction set forth in this Paragraph 9 is: (i) a fifty mile radius of the corporate headquarters of Synaptis; and (ii) a twenty mile radius of all cities where Synaptis has contracted to do business; and (iii) a twenty mile radius of all cities where Synaptis has contracts for software licenses or services under negotiation; and (iv) the United States.

The provisions and clauses of this Paragraph 9 are separate and independent covenants, and the invalidity or unenforceability of one or more of the provisions or clauses hereof shall not affect the validity or enforceability of the remaining provisions or clauses.

10.  Change of Noncompetition Restrictions.  The parties recognize that the law relating to noncompetition has been and is evolving, and what may be permitted as restrictions changes with decisions of the courts and new statutes.  Therefore, the Parties agree that to the extent the law changes Synaptis may, without the prior consent of Employee or any further compensation to Employee, amend any provision or clause of Paragraph 9 to meet the requirements of the change; provided, however, that no such amendment shall impose any greater restrictions on Employee than those in the above Paragraph 9.

11.  Exit Interview.  Employee agrees that upon termination of Employee's employment for any reason, Employee shall participate in an exit interview with Synaptis personnel.  At or prior to the time of this interview Employee shall deliver to Synaptis all notes, data, reference materials, sketches, drawings, memoranda, correspondence, manuals, letters, notebooks, reports, programs, proposals, or any other documents, whether in written, electronic or other media, concerning Synaptis' Business or incorporating or reflecting any of the Confidential Information.  Employee agrees that, upon request, Employee will execute a sworn statement that Employee has complied with the terms of this Paragraph, and that should Employee fail to execute such a statement Synaptis may withhold any and all amounts due to Employee for any reason, except minimum compensation required by law  .

12.  Extraordinary Relief.  Nothing in this Agreement shall be construed as prohibiting Synaptis from pursuing all remedies available to Synaptis for breach of this Agreement.  Employee recognizes and agrees that because of the unique nature of the Confidential Information his breach of this Agreement will irreparably injure Synaptis, for which Synaptis could not adequately be compensated by remedies at law.  Should Employee at any time reveal or use for the benefit of other than Synaptis or threaten to so reveal or use any Confidential Information, or during any restricted period violate or threaten to violate any of the restrictions in Paragraph 12, Synaptis shall be entitled to an injunction restraining Employee from doing or continuing to do or performing any such acts, and Employee hereby consents to the issuance of such injunction against Employee.  Employee further agrees to waive any bond requirement that may arise if Synaptis is forced to seek injunctive relief to enforce the terms of this Agreement.

13.  Successor Employers.  Employee hereby authorizes Synaptis to provide a copy of this Agreement, including any Exhibits, to any and all future employers, and to notify any and all future employers that Synaptis intends to exercise its legal rights arising out of or in conjunction with the Agreement and/or any breach or any inducement of breach of it.

14.  Arbitration.  Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association and shall be conducted in Raleigh, North Carolina.  If so directed by the Company, the Employee shall continue services and shall comply with all direction issued by the Company during the pendency of any arbitration initiated pursuant to this Article 10.

15.  Employee acknowledges that Employee has read and understands this Agreement and agrees to be bound hereunder during and after termination of Employee's services.  Employee understands that Synaptis has the right to bring suit against Employee if Employee violates any of Employee's obligations hereunder.  Employee agrees that the terms of this Agreement are fair and are reasonably required for the protection of the interests of Synaptis and it's shareholders. Employee further agrees that the restrictions and covenants of this Agreement will not impair the ability of Employee to secure employment so as to be able to make a reasonable living. The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim or cause of action of Employee against Synaptis whether predicated on this Agreement or otherwise.  Failure of Synaptis to enforce at any time or for any period of time any of the conditions or covenants of this Agreement shall not be construed as a waiver of such provisions or of the right of Synaptis to enforce

subsequent breaches of the same or other conditions and covenants, unless such permanent waiver is provided to Employee in writing and signed by the Chief Executive Officer of Synaptis.

This Agreement is effective upon Employee's initial date of employment, and is executed in duplicate originals.

Jordan Collard                                  Moonracer, Inc. (dba) Synaptis

_____                         By: _____
Employee                                        _____
09 - 28 - 09                                    9 - 28 - 09
Date                                            Date

# JORDAN PRICE WALL GRAY JONES & CARLTON

A PROFESSIONAL LIMITED LIABILITY COMPANY

1951 CLARK AVENUE
RALEIGH, NORTH CAROLINA 27605-0669

Paul T. Flick
Managing Partner

NCDRC Certified Superior Court Mediator

Telephone: (919) 828-2501
Facsimile: (919) 831-4484

April 15, 2013

Mailing Address:

Post Office Box 10669
Raleigh, N.C. 27605

www.jordanprice.com

pflick@jordanprice.com

**PERSONAL & CONFIDENTIAL**                    **VIA HAND DELIVERY**
Mr. Jordan N. Collard
1351 Still Monument Way
Raleigh, North Carolina 27603

      Re:    Synaptis Employment Agreement
            Our File No. 53135.500

Dear Mr. Collard:

      Please be advised that this Firm represents the interests of Moonracer, Inc. d/b/a Synaptis (hereinafter "Synaptis"). In connection with such representation, I have been provided with a copy of the Special Terms and Conditions of Employment Agreement dated September 28, 2009 (hereinafter the "Agreement") which you previously entered into with Synaptis. A copy of such Agreement is enclosed for your reference. In addition to such Agreement, I have also been provided with information concerning the termination of your employment with Synaptis, for cause.

      I was advised by Synaptis that you have indicated that you are planning to continue working in the IT industry. Please note that the Agreement referenced above which you had previously signed with Synaptis specifically sets forth that for a period of one (1) year after termination of employment with Synaptis, you would not accept employment with a business which competes with Synaptis. Under the Agreement, among other covenants, you have also specifically agreed not to use Synaptis Information, not to take any action detrimental to Synaptis and its relationship with its employees or independent contractors, and you agreed not to solicit, influence or attempt to influence any customer (licensee), potential customer, any provider of services or products to Synaptis, including any Oracle partner contacts or pipeline opportunities contacts.

      Please accept this letter as formal notice that Synaptis intends to enforce such Agreement. Take notice that in the event of a breach of such Agreement, Synaptis will file the appropriate legal action in an effort to protect its interests and enforce the terms and conditions of the Agreement previously signed by the parties.

EXHIBIT
E

In the event that you have any questions or comments, please feel free to contact my office.

Most sincerely,

JORDAN PRICE WALL GRAY JONES & CARLTON

Paul T. Flick

PTF:hm
Enclosure
cc:     Brad Mullahy (via email)



843 W. LELAND AVE UNIT 2 • CHICAGO, IL 60640
PHONE 502.510.1111 • E-MAIL COLLARD.JORDAN@YAHOO.COM

# JORDAN NICHOLAS COLLARD

## SUMMARY OF QUALIFICATIONS

I am a persistent and committed individual with a competitive attitude and desire to succeed. I have demonstrated ability to create new territories and expand business with existing client base. I also possess outstanding relationship building and communication skills. I am intelligent, responsible, and craving achievement.

## EDUCATION

August 2005 - December 2008        University of Kentucky        Lexington, KY
*Bachelor's of Arts & Sciences- Foreign Language & International Economics-Spanish*

## PROFESSIONAL EXPERIENCE

**Salseria in Sears Tower**, Chicago IL                    February 2009 – Present
*Server*

**Accident Research Specialist** , Cary NC                June 2008- July 2008
*Technician Internship*

- Assisted engineers in the office researching many different cases, outlining depositions, and worked on a two man team to construct a new website for the company. Out of the office, constructed field surveys, timed speeds, took photographs, and helped with all measurements of the vehicles or objects involved in the accidents.

**Cornerstone Biopharma,** Cary, NC
*Marketing Coordinator Intern*                           May 2006- March 2007

- Assisted with preparing market baskets for different drugs in different areas and also researched many different studies and drug combinations. In charge of preparing ideas for different drugs and receiving quotes from different companies for various marketing ideas.

*Pharmaceutical Sales Representative Intern*             May 2005 – January 2006

- Responsible for a specific territory, held lunches and events, and also made numerous cold calls. Completed expense reports, provided samples to physicians, and briefed physicians on the benefits of the company and products.

## REFERENCES

Donna Forbes White        **Cornerstone Therapeutics**        Cary, NC
*Director of Strategic Development,* (919) 946-1437

Mike Sutton                **Accident Research Specialist**        Cary, NC
CEO, (919) 349-3691



EXHIBIT
F



**synaptis**

## Application for Employment

We are an equal opportunity employer and do not unlawfully discriminate in employment. No question on this application is used for the purpose of limiting or excluding any applicant from consideration for employment on a basis prohibited by local, state, or federal law. Equal access to employment, services, and programs is available to all persons. Those applicants requiring reasonable accommodation to the application and/or interview process should notify a representative of the organization.

Applicant name: Jordan N. Collard    Position applied for: Business Development

Address: 107 trellingwood dr.   Morrisville, NC 27560

Telephone #: _____ Social Security #: _____

Type of employment desired: ✓ full-time _____ part-time _____ temporary

Date you will be available to start work: September 28, 2009

Are you able to meet the attendance requirements?                                   ✓ Yes          _____ No

Do you have any objection to working overtime if necessary?          _____ Yes          ✓ No

Can you travel if required by this position?                                             ✓ Yes          _____ No

Have you ever been previously employed by our organization?          _____ Yes          ✓ No

Can you submit proof of legal employment authorization and identity?   ✓ Yes          _____ No

If you are under 18, can you furnish a work permit if it is required?      ✓ Yes          _____ No

Have you been convicted of a crime in the last 7 years?                     _____ Yes          ✓ No

If yes, please explain (a conviction will not automatically bar employment): _____

How were you referred to us? Friend of the family

## Employment History

Please provide all employment information for your past four employers starting with the most recent (please do not write "see resume").

Most recent employer: _____

Address: _____ Position held: _____

Immediate supervisor and title: _____ Telephone #: _____

Dates employed: from _____ to _____

Job summary: _____ Salary: _____

Reason for leaving: _____

May we contact your most recent employer? _____ Yes _____ No

Employer: _____

Address: _____ Position held: _____

Immediate supervisor and title: _____ Telephone #: _____

Dates employed: from _____ to _____

Job summary: _____ Salary: _____

Reason for leaving: _____

Employer: _____ Position held: _____
Address: _____ Telephone #: _____
Immediate supervisor and title: _____
Dates employed: from _____ to _____ Salary: _____
Job summary: _____
Reason for leaving: _____
_____

Employer: _____ Position held: _____
Address: _____ Telephone #: _____
Immediate supervisor and title: _____
Dates employed: from _____ to _____ Salary: _____
Job summary: _____
Reason for leaving: _____
_____

## Skills and Other Qualifications
Summarize any job-related training, skills, licenses, certificates, and/or other qualifications:

_____
_____
_____
_____

## Educational History
List school name and location, years completed, course of study, and any degrees earned:

| Type of school | Name of school | Location (complete mailing address) | No. years completed | Major and degree |
|---|---|---|---|---|
| High school | | | | |
| College | | | | |
| Graduate school | | | | |
| Business or trade school | | | | |
| Professional school | | | | |

## References
List 3 professional references, preferably current or former supervisors. Describe their relationship to you, number of years they have known you, and appropriate contact information.

| Name | Relationship | Contact Information |
|---|---|---|
| Donna White | Friend of Pauly / Previous Boss | |
| Mike Sutton | Previous Boss | |
| Bob Cedida | Previous Boss | |

I hereby authorize the potential employer to contact, obtain, and verify the accuracy of information contained in this application from all previous employers, educational institutions, and references. I also hereby release from liability the potential employer and its representatives for seeking, gathering, and using such information to make employment decisions and all other persons or organizations for providing such information.

I understand that any misrepresentation or material omission made by me on this application will be sufficient cause for cancellation of this application or immediate termination for employment if I am employed, whenever it may be discovered.

If I am employed, I acknowledge that there is no specified length of employment and that this application does not constitute an agreement or contract for employment. Accordingly, either the employer or I can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.

I understand that it is the policy of this organization not to refuse to hire or otherwise discriminate against a qualified individual with a disability because of that persons need for a reasonable accommodation as required by the ADA.

I also understand that if I am employed, I will be required to provide satisfactory proof of identity and legal work authorization within three days of being hired. Failure to submit such proof within the required time shall result in immediate termination of employment.


I represent and warrant that I have read and fully understand the foregoing, and that I seek employment under these conditions.

Applicant signature: _____ Date: 09/23/09

Synaptis
10224 Durant Road
Suite 201
Raleigh, NC 27614

Phone: (919) 844 – 5840
Fax: (919) 844 – 5844

Website: www.synaptis.com



I Googled You... - Did That Really Happen? Need To Clear It From Google? Learn More....



# Jordan Collard

3rd

Business Development Manager at IT Convergence

Raleigh-Durham, North Carolina Area | Information Technology and Services

| | |
|---|---|
| Current | IT Convergence, OAUG, ESOAUG |
| Previous | Synaptis, OAUG, Accident Research Specialist |
| Education | University of Kentucky |

**Send InMail**

500+
connections

www.linkedin.com/in/jordancollard

Contact Info

**People Similar to Jordan**



**Robert Bishop** 3rd
Learning Consultant at Synaptis
Connect



Panasonic

Our Energy Solutions are Powering the Green Revolution.

Sonoma Raceway

Background

### Summary

I am Too Blessed to be Stressed!

Persistently Passionate- Not only am I passionate about my work, but the biggest advantage is my passion for people and the industry. I care about my customers personal success as well as the project success.

Always Accountable- I am always accountable to my word as well as my effort. I always give clients my cell phone number and let them know I am accessible 24 hours 7 days a week.

Constantly Creative- Always trying to think of the next best idea to make your project successful. Many times this characteristic comes alive when working to create a quality deliverable while staying under budget.

Definitely Dedicated- There is no one more dedicated to their company, industry, and client than myself. With me as an account manager I do everything in my power to ensure success. I am constantly asking for feedback to ensure my team is dedicated to providing the value the client expects. My dedication is transparent in my attitude and I believe that no one can match this.

Specialties: UPK Consulting & Enablement, Helping clients make informed buying decisions

### Experience

**Business Development Manager**
IT Convergence
May 2013 – Present (1 month) | Raleigh-Durham, North Carolina Area

**ITConvergence**

**Chairperson of UPK SIG**
OAUG
June 2012 – Present (1 year) | Global

Leading the UPK SIG to promote growth and interaction in the UPK community. My goal is to be a servant leader who can assist the community to become more educated and efficient with UPK through multiple channels of communication and interaction.

**Board Member**
ESOAUG
August 2011 – Present (1 year 10 months) | Raleigh-Durham, North Carolina Area

**People Also Viewed**


**Whitney Bradley**
Experienced Sales Professional


**Brad Mullahy**
CEO at Synaptis


**Brett Fleshman**
Sr. Director of Marketing


**Pat West**
President at Synaptis


**Robert Bishop**
Learning Consultant at Synaptis


**Robin Meehan**
Sales Account Manager at Synaptis


**Meredith Terrell**
Finance Manager at Synaptis


**John D. Scott**
Business Development Manager at Elire Inc.


**Josh Franklin**
Pharmaceutical Ex


**Jason Beyer**
Senior Product Manager at Cornerstone Therapeutics

EXHIBIT
G





You

### Vice President of Sales & Marketing
Synaptis
June 2012 – April 2013 (11 months) | Cary, NC

-Assisted in growing company by 40% from 2012-2013
-Achieved individual sales goal of $3 Million in 2012
-Assisted executive management in strategic planning & growth strategies

 Randy Whitmeyer

 Eric E. Molnet, CBM

David Damare

### Education Chair for UPK & Tutor SIG
OAUG
April 2011 – June 2012 (1 year 3 months)

28 more connections can
introduce you to someone who
knows Jordan
Get introduced ›

### UPK Account Manager & Consultant
Synaptis
September 2009 – June 2012 (2 years 10 months)



Responsible for managing and consulting with fortune 1000 accounts. Working with internal teams to implement a strategy for developing, designing, and delivering customized training solutions.

 Jordan Collard

▼ 6 recommendations, including:

 **Kelly O'Brien Burford**
Stakeholder Manager World Wide Partner
Organization at Cisco Systems

Jordan is such a unique and gifted individual it's a challenge to summarize all the benefits and resources he brings to each... View

 **Beth Renstrom**
Outbound Product Management at Oracle

Having worked with Jordan over the last year I've been continually impressed with his drive, positive energy,... View

**Jordan's Network**

4 more recommendations

### Technician Internship
Accident Research Specialist
June 2008 – July 2008 (2 months)

☐ Assisted engineers in the office researching many different cases, outlining depositions, and worked on a two man team to construct a new website for the company. Out of the office, constructed field surveys, timed speeds, took photographs, and helped with all measurements of the vehicles or objects involved in the accidents.

### Marketing Coordinator Intern
Cornerstone Therapeutics
March 2006 – March 2007 (1 year 1 month)

**In Common with Jordan**

› Assisted with preparing market baskets for different drugs in different areas and also researched many different studies and drug combinations. In charge of preparing ideas for different drugs and receiving quotes from different companies for various marketing ideas.

▼ 1 recommendation

 **Donna Forbes White**
Sr. Director, Commercial and Business Analytics at Cornerstone Therapeutics

Jordan worked for me in the Marketing department as an intern, functioning in the role of Marketing Coordinator. He showed early on that he could work independently, with little supervision, and get the job done quickly and completely. As the... View

### Phramaceutical Sales Representative Intern
Cornerstone Biopharma
May 2005 – January 2006 (9 months)

⌐ Responsible for a specific territory, held lunches and events, and also made numerous cold calls. Completed expense reports, provided samples to physicians, and briefed physicians on the benefits of the company and products.

Languages

**Spanish**



### Skills & Expertise

Most endorsed for...

| | | |
|---|---|---|
| 16 | Sales |  |
| 9 | Salesforce.com | |
| 9 | Marketing | |
| 7 | Account Management | |
| 5 | Business Development | |
| 5 | Cold Calling | |
| 4 | Strategic Planning | |
| 4 | New Business Development | |
| 3 | Sales Management | |
| 2 | UPK Consulting &... | |

Jordan also knows about...

| 2 | Customer Focus | 2 | Team Leadership | 1 | Marketing Strategy | 1 | Coaching |
|---|---|---|---|---|---|---|---|
| 1 | Project Management | | Custom Solutions | | Recruiting | | Microsoft Office |

### Education

**University of Kentucky**
Bachelors, Spanish and International Economics
2004 – 2008

**St. Xavier High School Louisville KY**
High School Diploma, Core
2000 – 2004

### Additional Info

**Personal Details**

Birthday    December 22

Help Center · About · Press · Blog · Careers · Advertising · Talent Solutions · Tools · Mobile · Developers · Publishers · Language · Upgrade Your Account

LinkedIn Corporation © 2013    User Agreement · Privacy Policy · Community Guidelines · Cookie Policy · Copyright Policy · Send Feedback

5/21/2013

LAW OFFICES

# Jordan Price Wall Gray Jones & Carlton

A Professional Limited Liability Company

1951 CLARK AVENUE
RALEIGH, NORTH CAROLINA 27605-0669

Paul T. Flick
Managing Partner
NCDRC Certified Superior Court Mediator

Telephone:   (919) 828-2501
Facsimile:   (919) 831-4484

Mailing Address:

Post Office Box 10669
Raleigh, N.C. 27605
www.jordanprice.com
pflick@jordanprice.com

May 8, 2013

Mr. Patrick Krause, President
IT Convergence
*Via electronic mail: pkrause@itconvergence.com*

  Re: Jordan Collard Agreement (Our File No. 53135.523)

Dear Mr. Krause:

  Please be advised that this Firm represents Moonracer, Inc. d/b/a Synaptis (hereinafter "Synaptis"). Pursuant to paragraph 13 thereof, please find attached a copy of the Special Terms and Conditions of Employment Agreement dated September 28, 2009 (hereinafter the "Agreement") between Jordan Collard and Synaptis. We have information that Mr. Collard is currently a Business Development Manager at IT Convergence, after he was terminated from Synaptis on April 15, 2013. Note that the Agreement specifically sets forth that for a period of one (1) year after termination of employment with Synaptis, Mr. Collard would not accept employment with a business which competes with Synaptis. Mr. Collard also agreed not to use Synaptis Information, not to take any action detrimental to Synaptis and its relationship with its employees or independent contractors, and not to solicit or attempt to influence any customer (licensee), potential customer, any provider of services or products to Synaptis, including any Oracle partner contacts.

  This letter is formal notice that Synaptis intends to enforce such Agreement, taking advantage of all legal claims and discovery techniques, unless you can assure me that Mr. Collard is not employed by IT Convergence. We intend to immediately file the appropriate legal action in an effort to protect the interests of Synaptis. In the event that you have any questions or comments, please feel free to contact my office.

  Most sincerely,

  JORDAN PRICE WALL GRAY JONES & CARLTON

  Paul T. Flick

PTF:hm
Enclosure
cc: Brad Mullahy (via email)

EXHIBIT
H

## Paul T. Flick

| | |
|---|---|
| **From:** | Patrick Krause <pkrause@itcovergence.com> |
| **Sent:** | Tuesday, May 21, 2013 6:07 PM |
| **To:** | Paul T. Flick |
| **Cc:** | Terry J. Carlton; Lori Jones |
| **Subject:** | Re: Message from "RNP2BDC71" |

Paul,
It's unfortunate that you're not accepting my offer to discuss a meaningful agreement that would help your client's piece of mind. As I said, I would be willing to help your client ensure that no one from our company solicits related business from his key clients. However, you have not been forth coming with who Synaptis clients are.

I have instructed Jordan not to share anything confidential or proprietary in nature. I have instructed my staff not to ask and not to accept anything that would be considered proprietary from Synaptis.

Jordan informed me that he is not in possession of any documents, lists or anything else that he came to have through his employment with Synaptis.

I don't think Synaptis is hardly related to the space we compete in. My understanding is that Synaptis does exclusively education. They hire and deploy training/curriculum experts and are technology agnostic. We are an Oracle consulting company. We focus exclusively on Oracle technologies. We do hosting, support, offshore development, global rollouts, upgrades and training related to these tasks.

The Channel managers at Oracle are employed to solicit and support multiple partners. Oracle has many thousands of partners and hundreds of thousands of end-users. How these products are to be used is defined by Oracle, in fact Oracle publishes a specific methodology that is supposed to be followed by any certified partner. The key point being that the products and methods of use are proprietary to Oracle. There is nothing I am aware of that Synaptis does that would be the slightest bit proprietary.

If you feel otherwise, please let me know.

Jordan is in the process of relocating to California and will be working at our headquarters. He will be training recent college grads on how to use UPK. He will be working with our marketing department on how to sell UPK per Oracle's recommended use cases. None of his activities will involve Synaptic staff or clients.

Patrick

On Tue, May 21, 2013 at 7:17 AM, Paul T. Flick <PFlick@jordanprice.com> wrote:

Patrick-



In conjunction with our representation of Moonracer d/b/a Synaptis (hereinafter "Synaptis") and pursuant to paragraph 13 thereof, we previously provided you, as the President of IT Convergence, with a copy of the Special Terms and Conditions of Employment Agreement dated September 28, 2009 (hereinafter the "Agreement") between Jordan Collard and Synaptis. You have confirmed in correspondence that Mr. Collard is in line for a position at IT Convergence, after he was terminated from Synaptis on April 15, 2013. Your e-mail response below indicates that you have withdrawn the offer of a business development position (although he is still publicly identifying such as his current position), but continuing "the process of finalizing a new role that would not be as similar to what he was doing" at Synaptis.

Please note that the Agreement specifically sets forth that for a period of one (1) year after termination of employment with Synaptis, Mr. Collard would not accept employment with a business which competes with Synaptis. In addition, Mr. Collard also agreed to hold all Synaptis Information and Work in strict confidence, not to take any action detrimental to Synaptis and its relationship with its employees or independent contractors, and not to solicit or attempt to influence any customer (licensee), potential customer, any provider of services or products to Synaptis, including any Oracle partner contacts.

Given the competitive stance between Synaptis and IT Convergence, Synaptis will take action to protect its confidential and proprietary information and work product if Mr. Collard is employed or retained by IT Convergence in any manner, as there is no way to protect from the inevitable disclosure of the confidential and proprietary information and the breach of covenants beyond the non-compete portion of the Agreement. We intend to enforce the Agreement, taking advantage of all legal claims and possible discovery techniques, unless you can assure me that Mr. Collard is not and will not be employed by IT Convergence. We will necessarily consider Unfair and Deceptive Trade Practices claims, tortuous interference, corporate raiding and misappropriation claims as to IT Convergence, as well. It is not incumbent upon Synaptis to inform you of the fact, but I assure you that it could not be more interested in this matter.

Paul T. Flick

Managing Partner

NCDRC Certified Superior Court Mediator

Jordan Price Wall Gray Jones & Carlton, PLLC

PO Box 10669 Raleigh NC 27605-0669

TEL: 919-828-2501

FAX: 919-834-8447

E-Mail: pflick@jordanprice.com

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

CIRCULAR 230 NOTICE:  To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The contents of this e-mail message may be privileged and/or confidential.  If you are not the intended recipient, any review, dissemination, copying, distribution or other use of the contents of this message or any attachment by you is strictly prohibited.  If you receive this communication in error, please notify us immediately by return e-mail or by telephone (919-828-2501), and please delete this message and all attachments from your system.  Thank you.

**From:** Patrick Krause [mailto:pkrause@itconvergence.com]
**Sent:** Monday, May 20, 2013 1:03 PM
**To:** Paul T. Flick
**Cc:** Terry J. Carlton
**Subject:** Re: Message from "RNP2BDC71"

I haven't heard from you either. I thought you lost interest!

We've withdrawn our offer of business development position.  We are in the process of finalizing a new role that would not be as similar to what he was doing at your client prior to being fired for performance.

Feel free to call me on my cell.

Sent from my iPhone

On May 20, 2013, at 9:38 AM, "Paul T. Flick" <PFlick@jordanprice.com> wrote:

> Patrick-
>
> We have not heard from you regarding any further attempt to reach an agreement since your e-mail of 5/10/13.

We, therefore, will assume that Mr. Collard is in the employ of IT Convergence unless you respond otherwise and will take the appropriate action.

Paul T. Flick

Managing Partner

NCDRC Certified Superior Court Mediator

Jordan Price Wall Gray Jones & Carlton, PLLC

PO Box 10669 Raleigh NC 27605-0669

TEL: 919-828-2501

FAX: 919-834-8447

E-Mail: pflick@jordanprice.com

\* \* \* \* \* \* \* \* \* \*

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The contents of this e-mail message may be privileged and/or confidential. If you are not the intended recipient, any review, dissemination, copying, distribution or other use of the contents of this message or any attachment by you is strictly prohibited. If you receive this communication in error, please notify us immediately by return e-mail or by telephone (919-828-2501), and please delete this message and all attachments from your system. Thank you.

**From:** Patrick Krause [mailto:pkrause@itconvergence.com]
**Sent:** Friday, May 10, 2013 3:52 PM
**To:** Paul T. Flick
**Cc:** Brad Mullahy (bmullahy@synaptis.com); Terry J. Carlton; Andrew Meinnert; Lori Jones
**Subject:** Re: FW: Message from "RNP2BDC71"

That's very unfortunate.  I've told Jordan that his start date will have to be delayed by at least a week to give us time to see if we can work out a reasonable agreement.  Under California law your client would likely be responsible for his lost wages.  I think it's in our mutual best interest to see how we can finalize an agreement that everyone is comfortable with.

On Fri, May 10, 2013 at 11:53 AM, Paul T. Flick <PFlick@jordanprice.com> wrote:

Patrick-

I have reviewed your offer with my client and it does not go far enough to protect the reasonable and legitimate business interests of Synaptis, which can be protected by enforcing the covenants in the Special Terms and Conditions of Employment that Mr. Collard executed in conjunction with his employment at Synaptis.

If Mr. Collard undertakes employment as a Business Development Manager at IT Convergence in violation of the covenants, we are prepared to immediately file suit.

Please let me know if you have any questions or comments.

Paul T. Flick

Managing Partner

NCDRC Certified Superior Court Mediator

Jordan Price Wall Gray Jones & Carlton, PLLC

PO Box 10669 Raleigh NC 27605-0669

TEL: 919-828-2501

FAX: 919-834-8447

E-Mail: pflick@jordanprice.com

*    *    *    *    *    *    *    *    *    *    *

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The contents of this e-mail message may be privileged and/or confidential. If you are not the intended recipient, any review, dissemination, copying, distribution or other use of the contents of this message or any attachment by you is strictly prohibited. If you receive this communication in error, please notify us immediately by return e-mail or by telephone (919-828-2501), and please delete this message and all attachments from your system. Thank you.

**From:** Patrick Krause [mailto:pkrause@itconvergence.com]
**Sent:** Thursday, May 09, 2013 5:28 PM
**To:** Paul T. Flick
**Cc:** Brad Mullahy (bmullahy@synaptis.com); Terry J. Carlton; Andrew Meinnert
**Subject:** Re: FW: Message from "RNP2BDC71"

Paul,

You can reach me on my cell or my extension this afternoon.

As I said, I believe we have a mutual interest in having our employees and past employees be on their best behavior, including a reasonable non-compete. What I would consider reasonable...

I would agree that ITC (not just Jordan)

* would not conduct business related to UPK at your top 10 accounts for 1 year provided we are not already providing these services.

* would not employ anyone that is currently employed or contracted by Synapsis for a defined period.

* Jordan would not do any business in the state of NC for a period of one year, and one additional state of your choice.

The things I would take exception to would be working with any and all contacts at Oracle. Oracle is a mutual partner that we are heavily engaged with. It would not be practical for us to agree to any restrictions. Oracle would not take kindly to us agreeing, or Synapsis asking for such a restriction.

Although I'm not familiar with NC law, I don't believe any reasonable court would find that selling or servicing 3rd party software made by one of the world's largest software companies that is sold and serviced by more than 3,000 partner companies is somehow confidential or proprietary to your client.

Most of the resumes of your client's staff are publicly available on linkedin, monster and dice or already in our inhouse database. Again, this is not confidential information. Those resumes have names of clients, usually all of them. This is obviously a normal practice of a consultant. The names of the people they worked for are provided as a standard practice in gathering work references.

What I'm offering I believe is a generous protection.

I have not engaged an attorney at this point. Our corporate counsel is only in California and Nevada. Jordan may be interested in relocating in which case our regular counsel would engage on the matter. If not, I would need to get local counsel. In the mean time please contact me directly. I would be representing IT Convergence as an executive officer.

Patrick,

On Thu, May 9, 2013 at 12:40 PM, Paul T. Flick <PFlick@jordanprice.com> wrote:

Patrick-

This will follow up our telephone conference yesterday regarding this Firm's representation of Moonracer, Inc. d/b/a Synaptis (hereinafter "Synaptis") to enforce the Special Terms and

Conditions of Employment Agreement dated September 28, 2009 (hereinafter the "Agreement") between Jordan Collard and Synaptis. You confirmed that Mr. Collard is now scheduled to start as a Business Development Manager at IT Convergence on May 13, 2013. As we discussed, the Agreement includes a non-compete, non-solicitation and confidentiality provision, among other obligations for Mr. Collard.

I agreed to look into the situation further and I have determined that Mr. Collard discussed employment with IT Convergence about a year ago, but returned to Synaptis and openly discussed the matter. He indicated then that he would have been working to strengthen the UPK program and be dealing with Oracle partners. This would be direct competition with Synaptis in clear violation of his Agreement. Synaptis intends to enforce such Agreement, taking advantage of all legal claims and discovery techniques to determine if there is something more than a breach of contract action. We believe that even before beginning in his position this coming Monday, Mr. Collard has already been contacting Oracle partners on behalf of IT Convergence and we are currently investigating.

You indicated yesterday that you understand the importance of non-competition agreements. My client is willing to discuss a creative resolution, if you can provide your express assurances that Mr. Collard is not taking any actions detrimental to Synaptis or by agreeing to compensate Synaptis for such actions. Without further consideration and agreement, we have no choice but to initiate legal action once Mr. Collard is employed by IT Convergence, requesting injunctive relief and to undertake extensive discovery in the matter. As we discussed, I would prefer to resolve the matter. In the event that you have any questions or comments, please feel free to contact my office or have your counsel do so.

Paul

Paul T. Flick

Managing Partner

NCDRC Certified Superior Court Mediator

Jordan Price Wall Gray Jones & Carlton, PLLC

PO Box 10669 Raleigh NC 27605-0669

TEL: 919-828-2501

FAX: 919-834-8447

E-Mail: pflick@jordanprice.com


\* \* \* \* \* \* \* \* \* \*


CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


The contents of this e-mail message may be privileged and/or confidential. If you are not the intended recipient, any review, dissemination, copying, distribution or other use of the contents of this message or any attachment by you is strictly prohibited. If you receive this communication in error, please notify us immediately by return e-mail or by telephone (919-828-2501), and please delete this message and all attachments from your system. Thank you.


**From:** Patrick Krause [mailto:pkrause@itconvergence.com]
**Sent:** Wednesday, May 08, 2013 5:43 PM
**To:** Paul T. Flick
**Cc:** Brad Mullahy (bmullahy@synaptis.com); Terry J. Carlton
**Subject:** Re: FW: Message from "RNP2BDC71"


Paul,

I tried calling you but I got your voicemail. Please call me on my cell phone and we can talk about it.


415-505-6567


Patrick


On Wed, May 8, 2013 at 12:41 PM, Paul T. Flick <PFlick@jordanprice.com> wrote:

Mr. Krause-

Please see attached letter and exhibit (Special Terms and Conditions of Employment

Agreement).

Let me know if you have any questions or comments or have your counsel contact me.

Regards,

Paul T. Flick
Managing Partner
NCDRC Certified Superior Court Mediator
Jordan Price Wall Gray Jones & Carlton, PLLC
PO Box 10669 Raleigh NC 27605-0669
TEL: 919-828-2501
FAX: 919-834-8447
E-Mail: pflick@jordanprice.com

*   *   *   *   *   *   *   *   *   *

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The contents of this e-mail message may be privileged and/or confidential. If you are not the intended recipient, any review, dissemination, copying, distribution or other use of the contents of this message or any attachment by you is strictly prohibited. If you receive this communication in error, please notify us immediately by return e-mail or by telephone (919-828-2501), and please delete this message and all attachments from your system. Thank you.

-----Original Message-----
From: jpadmin@jordanprice.com [mailto:jpadmin@jordanprice.com]
Sent: Wednesday, May 08, 2013 3:34 PM
To: Paul T. Flick
Subject: Message from "RNP2BDC71"

This E-mail was sent from "RNP2BDC71" (Aficio MP 6001).

Scan Date: 05.08.2013 15:33:58 (-0400)
Queries to: jpadmin@jordanprice.com

IT CONVERGENCE
Patrick Krause | President
Direct 415.962.8601
US/Canada: (800) 675-0032 ext. 2101
Fax 415.962.8777
Mobile 415.505-6567

--

IT CONVERGENCE
Patrick Krause | President
Direct 415.962.8601
US/Canada: (800) 675-0032 ext. 2101
Fax 415.962.8777
Mobile 415.505-6567

--

IT CONVERGENCE
Patrick Krause | President
Direct 415.962.8601
US/Canada: (800) 675-0032 ext. 2101
Fax 415.962.8777
Mobile 415.505-6567

--

IT CONVERGENCE
Patrick Krause | President
Direct 415.962.8601

US/Canada: (800) 675-0032 ext. 2101
Fax 415.962.8777
Mobile 415.505-6567

# STATE OF NORTH CAROLINA

_____WAKE_____ County

File No. ▶

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| MOONRACER, INC. d/b/a SYNAPTIS | |
| Address | |
| | **CIVIL SUMMONS** |
| City, State, Zip | ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name Of Defendant(s) | Date Original Summons Issued |
| JORDAN N. COLLARD | |
| | Date(s) Subsequent Summons(es) Issued |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| JORDAN N. COLLARD | |
| 1351 STILL MONUMENT WAY | |
| RALEIGH, NC 27603 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM |
|---|---|---|---|
| PAUL T. FLICK | 5/23/13 | 3 | ☒ PM |
| JORDAN PRICE WALL GRAY JONES & CARLTON | Signature | | |
| PO BOX 10669 | *CP* | | |
| RALEIGH, NC 27605 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | Date Of Endorsement | Time | ☐ AM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/11
© 2011 Administrative Office of the Courts

STATE OF NORTH CAROLINA FILED  IN THE GERENAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

2013 MAY 24  PM 12: 08

COUNTY OF WAKE

WAKE COUNTY, C.S.C.

MOONRACER, INC. D/B/A SYNAPTIS,

BY

        Plaintiff

)
)
)
)

v.

)
)

MOTION TO DISMISS

JORDAN N. COLLARD,

)
)
)

        Defendant.

)
)
)
)

Defendant Jordan Collard, by and through his undersigned counsel of record, moves to dismiss this action pursuant to Rules 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6) of the North Carolina Rules of Civil Procedure. In support of this motion, Defendant asserts the following:

1.    As of the date hereof, Plaintiff has not achieved service of process upon Mr. Collard.

2.    Mr. Collard is not a resident of North Carolina.

3.    As of the date hereof, this Court has no basis upon which to assert jurisdiction over the person of Mr. Collard.

4.    The Complaint fails to state a claim upon which relief can be granted by this court.

This Court has no jurisdiction over the Defendant or this matter and this action should therefore be dismissed.

This the 24th day of May, 2013.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.


By: _____
Susan H. Hargrove
N.C. State Bar No. 18771
P.O. Box 2611
Raleigh, North Carolina 27602
shargrove@smithlaw.com
(919) 821-1220
(919) 821-6800
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be served on all parties

to this action by and through their counsel, via hand delivery, addressed as follows:

> Paul T. Flick
> Jordan Price Wall Gray Jones & Carlton, PLLC
> pflick@jordanprice.com
> 1951 Clark Avenue
> Raleigh, North Carolina 27605

This 24th day of May, 2013.

By: _____
Susan H. Hargrove

FILED

STATE OF NORTH CAROLINA       IN THE GERENAL COURT OF JUSTICE

2013 MAY 29 PM 2: 26

                            SUPERIOR COURT DIVISION

COUNTY OF WAKE     WAKE COUNTY. C.S.C    *13 CVS 7199*

| | |
|---|---|
| MOONRACER, INC. D/B/A SYNAPTIS,   ) | |
|                                 ) | |
|         Plaintiff                ) | |
|                                 ) | |
| v.                                  ) | ORDER |
|                                 ) | |
| JORDAN N. COLLARD,             ) | |
|                                 ) | |
|         Defendant.            ) | |
|                                 ) | |

This matter came before the undersigned Judge at the May 24, 2013 term of the Superior Court of Wake County upon Plaintiff's Motion for a Temporary Restraining Order. Plaintiff was represented by Paul Flick and Lori Jones of Jordan Price Wall Gray Jones & Carlton, PLLC and Defendant was represented by Susan Hargrove of Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, PLLC. Having reviewed the Verified Complaint and heard argument of counsel, it appeared to the Court that:

     1.      Plaintiff has not demonstrated immediate and irreparable harm sufficient to support a Temporary Restraining Order.

     2.      Defendant's Motion to Dismiss, having been submitted to the Court without objection, prior to the offer of substantive response to the argument of Plaintiff's counsel on its Motion for a Temporary Restraining Order, preserves the defenses asserted, which defenses have not been waived by the appearance of counsel for the Defendant.

     3.      Among other things, Plaintiff's Complaint alleges that Defendant has knowledge and information that is confidential and proprietary to Plaintiff, which information Defendant is prohibited from using or disclosing. While the Court is not ruling on those claims at this very preliminary stage in the litigation, the Court notes that by virtue of the filing of the Complaint, Plaintiff has put Defendant on notice of the nature of Plaintiff's allegations against Defendant, in particular Plaintiff's allegations that Defendant has knowledge of information proprietary and confidential to Plaintiff which information Defendant is prohibited from disclosing, and determines that it is the expectation of the Court that the Defendant will abide by any obligation to refrain from the use or disclosure of such information pending a hearing on Plaintiff's Motion for a Preliminary Injunction. Specifically, it is the expectation of the Court that Defendant will not disclose to third parties or use in training on Oracle User Productivity Kit ("UPK") software, information about that software and its use that is unique and confidential to Plaintiff, during the period prior to the hearing on Plaintiff's Motion for a Preliminary Injunction. However, Defendant may conduct training or otherwise engage in business related to UPK software that does not use or disclose information about that software that is unique and confidential to Plaintiff.

4.     It is in the interest of the Parties that Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss be heard as expeditiously as reasonably possible.

5.     Each of the parties shall be entitled to take three depositions during the period between the date of the entry of this order and the date of the Preliminary Injunction Hearing, which depositions shall be limited to the following issues: (1) whether Plaintiff has confidential information regarding Oracle UPK software; (2) the nature, extent, scope and competitive value of such information; (3) whether such information was communicated to and is known by Defendant; and (4) the nature and scope of Defendant's position with IT Convergence, as it has existed from time to time from the date upon which Mr. Collard was offered a position until the date of the deposition.

It is therefore ORERED that:

1.     Plaintiff's Motion for Temporary Restraining Order is denied.

2.     Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss shall be set for hearing on June 28, 2013.

3.     Each of Plaintiff and Defendant shall be entitled to take three depositions prior to the hearing on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss which depositions shall be limited to eliciting information directly related to the following issues: (1) whether Plaintiff has confidential information regarding Oracle UPK software; (2) the nature, extent, scope and competitive value of such information; (3) whether such information was communicated to and is known by Defendant; and (4) the nature and scope of Defendant's position with IT Convergence, as it has existed from time to time from the date upon which Mr. Collard was offered a position until the date of the deposition.

4.     The fact that an individual or entity was deposed pursuant to this Order shall not be grounds for objection to an additional deposition during the discovery phase.

This is the 28 day of May, 2013.

The Hon. Howard E. Manning, Jr.
Superior Court Judge Presiding

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be served on all parties to this action by and through their counsel, via U.S. Mail, postage prepaid, addressed as follows:

Paul T. Flick
Jordan Price Wall Gray Jones & Carlton, PLLC
Post Office Box 10669
Raleigh, North Carolina 27605

This 29th day of May, 2013.

By: _____
Susan H. Hargrove

STATE OF NORTH CAROLINA

COUNTY OF WAKE

MOONRACER, INC., D/B/A
SYNAPTIS,

          Plaintiff,

    v.

JORDAN N. COLLARD,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7199

**ACCEPTANCE OF**
**SERVICE OF PROCESS**
**AND STIPULATION**

Paul T. Flick, counsel of record for Plaintiff Moonracer, Inc. d/b/a/ Synaptis and Susan H. Hargrove, counsel of record for Defendant Jordan N. Collard, stipulate as follows:

1.    Ms. Hargrove, as counsel to Defendant in the above-captioned action, the party to be served in the Summons, issued by the General Court of Justice, Superior Court Division, County of Wake, State of North Carolina is authorized to enter this Acceptance of Service on his behalf, which authorization is conditioned upon the stipulation by Plaintiff 's counsel as set forth herein that the acceptance of service does not constitute a waiver of Defendant's position that this court lacks personal jurisdiction over him, nor shall it be used or raised in any manner in opposition to Defendant's Motion to Dismiss for lack of personal jurisdiction.

2.    Mr. Flick, as counsel for the Plaintiff, hereby stipulates that this acceptance of service on behalf of Defendant does not constitute a waiver of Defendant's position that this court lacks personal jurisdiction over him, nor shall it be used or raised in any manner in opposition to Defendant's Motion to Dismiss for lack of personal jurisdiction.

3.    That by the execution hereof Defendant Jordan N. Collard hereby accepts service of the Summons as of the date below and acknowledges receipt of a copy of the Civil Summons to be served, and the Complaint.

4.    That service by the methods set forth in Rule 4 of the North Carolina Rules of Civil Procedure is hereby expressly waived.

This the 31st day of May, 2013.

SMITH, ANDERSON, BLOUNT, MITCHELL, & JERNIGAN, LLP

_Susan H. Hargrove._
PO Box 2611
Raleigh, NC 27612
shargrove@smithlaw.com
919.821.1220
*Attorney for the Defendant*

JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC

Paul T. Flick
PO Box 10669
Raleigh, NC 27605
Pflick#@jordanprice.com
919.828.2501
*Attorney for the Plaintiff*

2

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7199

MOONRACER, INC., D/B/A
SYNAPTIS,

Plaintiff,

v.

JORDAN N. COLLARD,

Defendant.

**STIPULATUION UNDER RULE 30(b)(7)**

NOW COME Paul T. Flick, counsel of record for the Plaintiff and Susan H. Hargrove,

counsel of record for Defendant, in the above-captioned action and say:

1.      That the parties hereby stipulate in writing pursuant to Rule 30(b)(7) of the North

Carolina Rules of Civil Procedure that the depositions set herein pursuant to the Order dated

May 28, 2013 may be conducted by telephone or video teleconference.

2.      Pursuant to the Rules, a deposition taken by telephone or video teleconference is

taken in the district and the place where the deponent is to answer questions propounded to him.

3.      That nothing in this Stipulation shall waive any objections the parties may raise

regarding such depositions.

This the 12th day of June, 2013.

Susan H. Hargrove
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, L.L.P.
PO Box 2611
Raleigh, NC  27612
*Attorney for the Defendant*

Paul T. Flick
Jordan Price Wall Gray Jones &
Carlton, PLLC
PO Box 10669
Raleigh, NC  27605
*Attorney for the Plaintiff*

US2000 10796750.1

STATE OF NORTH CAROLINA

COUNTY OF WAKE

FILED

2013 JUN 14 PM 1:38

WAKE COUNTY, C.S.C.

BY _____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7199

MOONRACER, INC. D/B/A SYNAPTIS,

        Plaintiff,

v.

JORDAN N. COLLINS,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**JOINT MOTION FOR CONTINUANCE**

NOW COME Plaintiff and Defendant, by and through their undersigned counsel, pursuant to Rule 8 of the Local Rules of Wake County and Rule 3 of the General Rules of Practice for the Superior and District Courts, and move this Court for an Order continuing the hearings set for June 28, 2013, to July 10, 2013, or as soon thereafter as the Court may hear the same. In support thereof, the parties show unto the Court as follows:

1.      On May 28, 2013, the Honorable Howard E. Manning, Jr. entered an order ("Order") setting Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss for hearing on June 28, 2013.

2.      The Order further provided that the parties would be entitled to take three (3) depositions each prior to the hearing on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss.

3.      The parties have not completed depositions at this time, due in part to the fact that certain witnesses are located in California, and request that the Court continue the scheduled

hearings until July 10, 2013, or as soon thereafter as the Court may hear the same, to allow the parties to take additional depositions which directly bear on the matters to be heard by the Court.

WHEREFORE, the parties respectfully request that the Court continue the hearings on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss from the current June 28, 2013 setting to July 10, 2013, or as soon thereafter as the Court may hear the same.

This the 14th day of June, 2013.

JORDAN PRICE WALL GRAY JONES & CARLTON

Paul T. Flick
N.C. State Bar No. 13494
Lori P. Jones
N.C. State Bar No. 32872
Post Office Box 10669
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
*Counsel for the Plaintiff*


SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

Susan H. Hargrove
Post Office Box 2611
Raleigh, North Carolina 27612
Telephone: (919) 821-6716
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing parties, named below, with the foregoing document by placing a copy in a properly addressed envelope with adequate postage thereon, in the United States Mail, in the manner prescribed by Rule 5 of the Rules of Civil Procedure, or as otherwise directed by counsel for Plaintiffs.

> Susan H. Hargrove
> Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
> PO Box 2611
> Raleigh, NC 27612
> *Attorney for the Defendant*

This the 14th day of June, 2013.

> JORDAN PRICE WALL GRAY JONES & CARLTON
> *Counsel for Plaintiff*
>
> Paul T. Flick

STATE OF NORTH CAROLINA

FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

COUNTY OF WAKE

2013 JUN 14  PM 1: 39       13 CVS 7199

WAKE COUNTY. C.S.C.

MOONRACER, INC. D/B/A SYNAPTIS, )
                                )
            Plaintiff,          )
                                )
                                )       **ORDER FOR CONTINUANCE**
v.                              )
                                )
                                )
JORDAN N. COLLINS,              )
                                )
            Defendant.          )
                                )
                                )

      This cause was heard by the undersigned judge on the Joint Motion of Plaintiff and Defendant, by and through their counsel of record, to continue until July 10, 2013, or as soon thereafter as the Court may hear the same, the hearings on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss that were originally scheduled for June 28, 2013. Upon review of the Motion, and for good cause shown, it appears to the Court that the motion should be allowed.

      IT IS THEREFORE ORDERED that the hearings on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss that were originally scheduled for June 28, 2013, shall be continued until July 10, 2013, or as soon thereafter as the Court may hear the same.

      This the _14_ day of June, 2013.

                               The Honorable Howard E. Manning, Jr.
                               Superior Court Judge Presiding

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GERERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13CVS7199

MOONRACER, INC. D/B/A )
SYNAPTIS, )
)
Plaintiff )
)
v. )
)
JORDAN N. COLLARD, )
)
Defendant. )

CONSENT MOTION TO EXPEDITE
DISCOVERY

Defendant Jordan N. Collard ("Defendant" or "Collard") hereby moves the Court, pursuant to Rules 26(d) and 34 of the North Carolina Rules of Civil Procedure, for an Order allowing expedited discovery in this case, requiring Plaintiff Moonracer, Inc. d/b/a Synaptis ("Plaintiff" or "Synaptis") to respond to Defendant's First Set of Requests for Production within seven (7) calendar days from the date of service via hand delivery without an extension of time. Plaintiff has consented to this motion. In support of this motion, Defendant shows the Court as follows:

1. On May 23, 2013, the Complaint in this matter was filed in the Superior Court of Wake County.

2. On May 28, 2013, a Hearing was held before Judge Howard E. Manning, Jr. on Plaintiff's Motion for a Temporary Restraining Order.

3. On May 28, 2013, Judge Manning entered an Order denying Plaintiff's Motion for a Temporary Restraining Order. Judge Manning's Order set a date of June 28, 2013 for a Preliminary Injunction Hearing.

4. On June 14, 2013, Defendant served its First Set of Requests for Production of Documents and Tangible Things on Plaintiff via facsimile. In this Request for Production, Defendant requested access to any computer and other electronic devices issued to Defendant while he was working at Synaptis ("Electronic Devices") for the purpose of creating forensic images of the Electronic Devices by a third party forensic expert.

5. Plaintiff agreed to this expedited discovery and agreed that the Electronic Devices would not be used except for the purpose of making for forensic images.

6. This motion is made in good faith and for good cause.

WHEREFORE, Defendant hereby moves this Court to enter an Order allowing expedited discovery in this case, ordering the following:

Plaintiff will allow access to the Electronic Devices by a third party forensic expert hired by Defendant on or before Friday, June 21, 2013;

Defendant's forensic expert will have ten (10) days from the date the Electronic Devices are received to make the forensic images and return the Electronic Devices to Plaintiff;

Defendant's forensic expert will not modify the content of the Electronic Devices in any way; and

Plaintiff shall not use or alter the Electronic Devices in any way until after this litigation has concluded, except that Plaintiff may monitor the Electronic Devices and have its own forensic expert make forensic images.

This the 14th day of June, 2013

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By: _____

Susan H. Hargrove
N.C. State Bar No. 18771
Francisco J. Benzoni
N.C. State Bar No. 38660
P.O. Box 2611
Raleigh, NC 27602
Phone No.: (919) 821-1220
Facsimile No.: (919) 821-6800
*Attorneys for Defendant Jordan N. Collard*

**CONSENTED BY:**

This the 14th day of June, 2013

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By: _____

Susan H. Hargrove
N.C. State Bar No. 18771
Francisco J. Benzoni
N.C. State Bar No. 38660
P.O. Box 2611
Raleigh, NC 27602
Phone No.: (919) 821-1220
Facsimile No.: (919) 821-6800
*Attorneys for Defendant Jordan N. Collard*


This the 4th day of June, 2013

JORDAN PRICE WALL GRAY JONES &
CARLTON, PLLC

By: _____

Paul T. Flick
Lori P. Jones
Post Office Box 10669
Raleigh, North Carolina 27605
*Attorney for Plaintiff Synaptis*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served a copy of the foregoing **CONSENT MOTION TO EXPEDITE DISCOVERY** in the above-entitled action upon all other parties to this cause by hand delivery, addressed as follows:

> Paul T. Flick
> Lori P. Jones
> Jordan Price Wall Gray Jones & Carlton, PLLC
> Post Office Box 10669
> Raleigh, North Carolina 27605

This 14th day of June, 2013.

By: _____
Francisco J. Benzoni
Susan H. Hargrove

STATE OF NORTH CAROLINA

COUNTY OF WAKE

FILED
2013 JUN 14 PM 1:47
WAKE CO., C.S.C.
BY

IN THE GERENAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13CVS7199

MOONRACER, INC. D/B/A
SYNAPTIS,

        Plaintiff

v.

JORDAN N. COLLARD,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CONSENT ORDER TO EXPEDITE
DISCOVERY

This matter is before the Court on Defendant Jordan N. Collard's Consent Motion for Expedited Discovery.

WHEREAS, a Preliminary Injunction Hearing is calendared in this matter for June 28, 2013;

WHEREAS, Defendant has served discovery requests seeking access to any computer and other electronic devices issued to Defendant while he was working at Synaptis ("Electronic Devices") for the purpose of making forensic images of the Electronic Devices by a forensic expert hired by Defendant on or before June 21, 2013;

WHEREAS, Plaintiff has consented to allow such access on or before June 21, 2013 and has agreed not to alter or make use of the Electronic Devices until after the conclusion of this litigation, provided that Plaintiff may monitor the Electronic Devices and have its own forensic expert make forensic images.

**WHEREFORE, IT IS ORDERED THAT**, for good cause shown, Defendant's Motion to Expedite Discovery is GRANTED.

IT IS FURTHER ORDERED THAT:

Plaintiff shall allow access to the Electronic Devices by a third party forensic expert hired by Defendant on or before Friday, June 21, 2013;

Defendant's forensic expert shall have ten (10) days from the date the Electronic Devices are received to make the forensic images and return the Electronic Devices to Plaintiff;

Defendant's forensic expert shall not modify the content of the Electronic Devices in any way; and

Plaintiff shall not use or alter the Electronic Devices in any way until after this litigation has concluded, except that Plaintiff may monitor the Electronic Devices and have its own forensic expert make forensic images.

This the 14th day of June, 2013

_____
Superior Court Judge Presiding

**CONSENTED BY:**

This the 14th day of June, 2013

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: _____
Susan H. Hargrove
N.C. State Bar No. 18771
Francisco J. Benzoni
N.C. State Bar No. 38660
P.O. Box 2611
Raleigh, NC 27602
Phone No.: (919) 821-1220
Facsimile No.: (919) 821-6800
*Attorneys for Defendant Jordan N. Collard*

This the ___ day of June, 2013

JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC

By: _____
Paul T. Flick
Lori P. Jones
Post Office Box 10669
Raleigh, North Carolina 27605
*Attorney for Plaintiff Synaptis*

STATE OF NORTH CAROLINA 2013 JUN 14 PM 1:38 THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF WAKE        WAKE COUNTY, C.S.C.        13 CVS 7199

BY_____

| | |
|---|---|
| MOONRACER, INC. D/B/A SYNAPTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )        **PROTECTIVE ORDER** |
| | ) |
| | ) |
| JORDAN N.COLLARD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to rule 26(c) of the North Carolina Rules of Civil Procedure, upon the consent of the parties, as to a Protective Order as to certain information that may be confidential, proprietary or trade secret to be revealed or produced by the parties, as well as certain third-parties, n the above-referenced action, it is hereby upon good cause shown, ordered that:

1.        Any document, or portion thereof, and any other form of evidence or discovery contemplated under Rules 26 through 36 and Rule 45 of the North Carolina Rules of Civil Procedure, produced by the Plaintiff to the Defendant or vice versa or by a third-party, which information the producing party believes in good faith to be confidential and which is  and marked "Confidential" in this action will be deemed to be "Confidential Information" as defined hereunder unless the Parties both agree in writing that such information does not warrant protection from public disclosure or general dissemination.

2.        For the purposes of this Order, confidential information is defined as commercially sensitive internal information that the producing party maintains and treats as confidential in the ordinary course of its business. To designate a document confidential the

designating party must ensure that the term "CONFIDENTIAL" prominently appears on those pages or portions of the document intended to be so designated. With multi=page documents, it shall be enough that the appropriate legends, or their substantial equivalents, appear on the first page of the document. Any party may designate appropriate portions of deposition testimony as "CONFIDENTIAL" by either indicating on the record or within ten days after receipt of the transcript, notifying all other parties of such designation. All depositions shall be treated as confidential until ten days after the deposition transcript has been circulated. .

    3.    Confidential Information that is made available to the Plaintiff or Defendant pursuant to this Protective Order shall initially be received only by counsel of the opposing party, and such counsel shall thereafter safeguard and retain custody and/or control of all documents and things that contain, embody or reflect the producing party's Confidential Information, except as set forth herein.

    4.    Except as otherwise provided by this Protective Order, Confidential Information shall not be made available to, or be disclosed to, any person, without the written permission of the Plaintiff or Defendant, except to:

    (a)    the Court, which includes judges and jurors, and associated judicial officers and personnel (and the mediator(s) designated by the Court an/or the parties);

    (b)    counsel and personnel of counsel to the Parties;

    (c)    the Parties;

    (d)    service contractors (such as outside photocopy or imaging services);

    (g)    certified court reporters taking testimony involving Confidential Information and their support personnel;

    (h)    independent experts, in accordance with the provisions of this Protective Order; and

(i)     such other persons as the producing party of the Confidential Information may consent to in writing.

5.     If either Party intends to use its own Confidential Information in the examination of a witness who is not listed as a party entitled to received Confidential Information pursuant to paragraph 4, that  Party shall notify counsel for the opposing party ten days prior to the scheduled examination of the witness of his intention, identifying by Bates number or providing copies of all documents intended to be used and the identified witness shall be deemed a person entitled to disclosure of the identified information pursuant to paragraph 4.

5.     Confidential Information may be disclosed to independent experts who are retained by the Plaintiff or the Defendant to furnish expert or technical services or to give expert testimony with regard to this action and not otherwise affiliated in any way with either party. Upon disclosure of Confidential Information to such independent experts, counsel for the Plaintiff or the Defendant shall inform the expert that the information is subject to this Protective Order and that such information is not to be disclosed except for purposes of this litigation.

6.     If any document or thing containing or embodying Confidential Information is filed with the Court, it shall be filed and kept by the Court under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. Subject to the North Carolina Rules of Evidence, Confidential Information may be offered in evidence at trial or any court hearing, provided that the proponent of the evidence gives five days' advance notice to counsel for the party or other person that so designated the information. Any party or other person that so designated the information may move the Court for an Order that the evidence be received *in camera* or under other conditions  to prevent unnecessary disclosure. The Court will

then determine whether the proffered evidence should continue to be treated as protected and, of so, what protection may be afforded to such information at the trial or hearing.

7.      The Clerk of Court is directed to maintain under seal and *in camera* all documents and things filed with the Court that have been designated as containing or embodying Confidential Information. To assist the Clerk, the Party filing any document or thing that contains or embodies Confidential Information, except during trial, shall file such document or thing in a sealed envelope or other appropriately sealed container on which shall be endorsed: (i) the title and docket number of this action, (ii) an identification of the nature of the contents of the sealed envelope or container, and (iii) a statement substantially in the following form: CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER. This envelope, containing documents that are filed in this case, is not to be opened nor are the contents thereof to be displayed or revealed except by Order of the Court. A second copy of any document or thing containing or embodying Confidential Information and specifically intended for review by the Court may be hand-delivered to the Court's chambers appropriately marked, in order to assure that the same is brought promptly to the Court's attention. At the conclusion of this civil action, any documents or things filed with the Court under seal shall be kept under seal or be returned to the Party filing it for disposition pursuant to the provisions of this Protective Order.

8.      Confidential information shall be used only for the purpose of this litigation and for no other purpose whatsoever.

9.      The restrictions set forth in this Protective Order shall not apply to Confidential Information that is lawfully acquired by a Party from another source having the right to disclose such information.

10. Nothing in this Protective Order shall be construed as an agreement or admission: (a) that any information, document or like designated as Confidential Information is in fact confidential; or (b) with respect to the competency, relevance, admissibility or materiality of any such information, document or the like.

11. The inadvertent or unintentional failure by a producing party to designate specific documents or materials as containing Confidential Information shall not be deemed a waiver in whole or in part of a Party's claim of confidentiality as to such documents or materials. Upon notice to the receiving Party of such failure to designate, the receiving Party shall cooperate to restore the confidentiality of the inadvertently disclosed information.

12. Within sixty (60) days after a final decision from which no appeal has or can be taken, all documents, objects and other materials produced or designated as Confidential Information pursuant to this Order, and all reproductions thereof, shall be returned to the disclosing party or shall be destroyed and such fact relayed in writing through counsel. Confidential Information that is used during a hearing, trial, and/or appeal does not become part of the public domain. Rather, the protections of this Order shall continue to apply thereto. After such hearing, trial, or appeal, or at the conclusion of this litigation, the Parties may work with the Clerk of Court to seal any exhibit or other evidence containing Confidential Information under the provisions of this Order.

13. Neither the entry of this Protective Order nor the designation of any information, document, or the like as Confidential Information, nor the failure to make such designation, shall constitute evidence with respect to any issue in this action.

14. This Protective Order is without prejudice to the right of any Party to seek relief from the Court, upon good cause shown, from any of the restrictions provided above or to

impose additional restrictions on the disclosure of any information or material produced. The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to it as the Court may from time to time deem appropriate.

This the ___14th___ day of June, 2013.

_____
Superior Court Judge

CONSENTED TO:

SMITH, ANDERSON, BLOUNT, DORSETT
MITCHELL & JERNIGAN, L.L.P.

BY: _____
Susan H. Hargorve
N.C. State Bar No. 18771
Post Office Box 2611
Raleigh, North Carolina 27602
*Counsel for Defendant*

DATE: _6/12/13_____

CONSENTED TO:

JORDAN PRICE WALL GRAY JONES & CARLTON,
PLLC

BY: _____
Paul T. Flick
N.C. State Bar No. 13494
Lori P. Jones
N.C. State Bar No. 32872
Post Office Box 10669
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
*Counsel for Plaintiff*

DATE: _6/12/13_____

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Christopher M. Ahearn, SBN 239089<br>OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.<br>Steuart Tower, Suite 1300<br>One Market Plaza<br>San Francisco, CA 94105<br>TELEPHONE NO.: 415-442-4810    FAX NO.: 415-442-4870<br>E-MAIL ADDRESS: chris.ahearn@odnss.com<br>ATTORNEY FOR (Name): Moonracer Inc., d/b/a Synaptis | |

Court for county in which discovery is to be conducted:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister
MAILING ADDRESS: 400 McAllister
CITY AND ZIP CODE: San Francisco, CA 94102-4512
BRANCH NAME: Downtown Superior

Court in which action is pending:
Name of Court: North Carolina Wake County Superior Court
STREET ADDRESS: 316 Fayetteville Street
MAILING ADDRESS: 316 Fayetteville Street
CITY, STATE, AND ZIP CODE: Raleigh, North Carolina 27601
COUNTRY:

| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis<br><br>DEFENDANT/RESPONDENT: Jordan N. Collard | CALIFORNIA CASE NUMBER (if any assigned by court): |
|---|---|
| **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA** | CASE NUMBER (of action pending outside California):<br>13 CVS 7199 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):
Patrick Krause, 805 Veterans Blvd. #216, Redwood City, CA 94063

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS** in this action at the following date, time, and place:

| Date: June 28, 2013 Time: 8:00 a.m. | Address: Ogletree Deakins Nash smoak & Stewart, P.C., Stewart Tower #1300, One Parket Plaza, San Francisco, CA 94105 |
|---|---|

   a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)

   b. ☒ You are ordered to produce the documents, electronically stored information, and things described in item 3.

   c. This deposition will be recorded stenographically ☐ through the instant visual display of testimony
and by ☒ audiotape ☒ videotape.

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents, electronically stored information, and things to be produced and any testing or sampling being sought are described as follows: (if electronically stored information is required, the form or forms in which each type of information is to be produced may be specified): See Attached Subpoena

   ☐ Continued on Attachment 3 (use form MC-025).

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows: See Attached Subpoena

   ☐ Continued on Attachment 4 (use form MC-025).

5. Attorneys for the parties to this action or parties without attorneys are (name, address, telephone number, and name of party represented): Christopher M. Ahearn, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105, Telephone: 415-536-3411, Representing Moonracer Inc., d/b/a Synaptis

   ☒ Continued on Attachment 5 (use form MC-025).

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-045 [Rev. January 1, 2012]

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

Code of Civil Procedure, §§ 2029.100–900,
2020.510, 2025.220, 2025.230, 2025.250,
2025.620; Government Code, § 68097.1
*Legal Solutions Plus*

| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Jordan N. Collard | 13 CVS 7199 |

6. [x] Other terms or provisions from out-of-state subpoena, if any (specify):
   See Attached Subpoena

   [ ] Continued on Attachment 6 (use form MC-025).

7. If you have been served with this subpoena as a custodian of consumer or employee records under Code of Civil Procedures section 1985.3 or 1985.6 and a motion to quash or an objection has been served on you, a court order or agreement of the parties, witnesses, and consumer or employee affected must be obtained before you are required to produce consumer or employee records.

8. At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.

---

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

---

Date issued: June 17, 2013

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Christopher M. Ahearn                    Attorney for Moonracer Inc., d/b/a Synaptis
_____                 _____
(TYPE OR PRINT NAME)                     (TITLE)

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS**

1. I served this Deposition Subpoena for Personal Appearance and Production of Documents, Electronically Stored Information, and Things in Action Pending Outside California by personally delivering a copy to the person served as follows:

   a. Person served (name):

   b. Address where served:

   c. Date of delivery:                    d. Time of delivery:

   e. Witness fees and mileage both ways (check one):
      (1) [ ] were paid. Amount: . . . . . . . . . . $ _____
      (2) [ ] were not paid.
      (3) [ ] were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was (specify): $ _____

   f. Fee for service: . . . . . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on (date):

3. [ ] I also served a completed Proof of Service of Notice to Consumer or Employee and Objection (form SUBP-025) by personally delivering a copy to the person served as described in 1 above.

4. Person serving:
   a. [ ] Not a registered California process server
   b. [ ] California sheriff or marshal
   c. [ ] Registered California process server
   d. [ ] Employee or independent contractor of a registered California process server
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b)
   f. Name, address, telephone number, and, if applicable, county of registration and number:

---

| I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.<br>Date: | (For California sheriff or marshal use only)<br>I certify that the foregoing is true and correct.<br>Date: |
|---|---|
| ▶ _____<br>(SIGNATURE) | ▶ _____<br>(SIGNATURE) |

SUBP-045 [Rev. January 1, 2012]       **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION IN ACTION PENDING OUTSIDE CALIFORNIA**

| SHORT TITLE: Moonracer In., d/b/a Synaptis v. Jordan N. Collard | CASE NUMBER: 13 CVS 7199 |
|---|---|

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

Lori P. Jones, JORDAN PRICE WALL GRAY JONES & CARLTON, 1951 Clark Avenue, Raleigh, North Carolina 27605-0669, Telephone 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, Representing Moonracer Inc. d/b/a Synaptis

Susan H. Hargrove, SMITH ANDERSON, 150 Fayetteville Street, Suite 2300, Raleigh, North Carolina, 27601, Telephone: 919.821.1220, Representing Jordan N. Collard

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
Plus

Case 5:13-cv-00455-BO   Document 1-1   Filed 06/24/13   Page 84 of 111

# STATE OF NORTH CAROLINA

WAKE _____ County FILED

2013 JUN 14 PM 1:39

WAKE COUNTY C.S.C.

BY _____

File No. 13 CVS 7199

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Additional File Numbers*

Moonracer, Inc. d/b/a Synaptis

**VERSUS**

Jordan Collard

## SUBPOENA

G.S. 1A-1, Rule 45; G.S. 8-59

*Party Requesting Subpoena*
☒ State/Plaintiff  ☐ Defendant

**NOTE TO PARTIES NOT REPRESENTED BY COUNSEL:** *Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge.*

*Name And Address Of Person Subpoenaed*
TO
Patrick Krause
805 Veterans Blvd #216
Redwood City, CA  94063

*Alternate Address*

*Telephone No.*
415-962-8601

*Telephone No.*

**YOU ARE COMMANDED TO:** *(check all that apply):*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☒ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

☐ See attached list. *(List here if space sufficient)*

Produce any and all documents and communications, including e-mail and other correspondence, between you and Jordan Collard since September 28, 2009, regarding the opportunity for Collard's employment with IT Convergence; any and all communications regarding any position of employment with IT Convergence that you offered to Jordan Collard; any and all communications by you with Jordan Collard regarding Collard's role at Moonracer, Inc. d/b/a Synaptis; any and all communications by you with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis; and any and all communications by you with Jordan Collard regarding Jordan Collard's involvement with Oracle UPK while employed with IT Convergence.

*Name And Location Of Court/Place Of Deposition/Place To Produce*
Law Offices of Ogeltree Deakins
Steuart Tower, Suite 1300, One Market Plaza
San Francisco           CA        94105

*Date To Appear/Produce*
06/28/2013

*Time To Appear/Produce*
11:00 a.m. Eastern Standard Time    ☒ AM  ☐ PM

*Name And Address Of Applicant Or Applicant's Attorney*
Paul T. Flick
Jordan Price Wall Gray Jones & Carlton, PLLC
P.O Box 10669,   Raleigh,     NC      27605

*Date*
6/14/13

*Signature*

*Telephone No. Of Applicant Or Applicant's Attorney*
919-828-2501

☐ Deputy CSC
☐ Magistrate
☐ Assistant CSC
☐ Attorney/DA
☐ Clerk Of Superior Court
☐ District Court Judge
☒ Superior Court Judge

## RETURN OF SERVICE

I certify this subpoena was received and served on the person subpoenaed as follows:

By ☐ personal delivery.   ☐ registered or certified mail, receipt requested and attached.

☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify)*

☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case.*
   **NOTE TO COURT:** *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*

☐ I was unable to serve this subpoena. Reason unable to serve: _____

| *Service Fee*<br>$ | ☐ *Paid*<br>☐ *Due* | *Date Served* | *Name Of Authorized Server (Type Or Print)* | *Signature Of Authorized Server* | *Title* |
|---|---|---|---|---|---|

**NOTE TO PERSON REQUESTING SUBPOENA:** *A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.*

*(Please See Reverse Side)*

AOC-G-100, Rev. 5/13
© 2013 Administrative Office of the Courts

### (c) Protection Of Persons Subject To Subpoena

(1) <u>Avoid undue burden or expense.</u> - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) <u>For production of public records or hospital medical records.</u> - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) <u>Written objection to subpoena.</u> - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:

    a. The subpoena fails to allow reasonable time for compliance.
    b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
    c. The subpoena subjects a person to an undue burden or expense.
    d. The subpoena is otherwise unreasonable or oppressive.
    e. The subpoena is procedurally defective.

(4) <u>Order of court required to override objection.</u> - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) <u>Motion to quash or modify subpoena.</u> - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) <u>Order to compel: expenses to comply with subpoena.</u> - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) <u>Trade secrets; confidential information.</u> - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) <u>Order to quash: expenses.</u> - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

### (d) Duties In Responding To Subpoena

(1) <u>Form of response.</u> - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) <u>Form of producing electronically stored information not specified.</u> - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) <u>Electronically stored information in only one form.</u> - The person responding need not produce the same electronically stored information in more than one form.

(4) <u>Inaccessible electronically stored information.</u> - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a). The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) <u>Specificity of objection.</u> - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

---

## INFORMATION FOR WITNESS

NOTE: *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

### DUTIES OF A WITNESS

- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

### BRIBING OR THREATENING A WITNESS

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

### WITNESS FEE

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

Case 5:13-cv-00455-BO   Document 1-1   Filed 06/24/13   Page 86 of 111

**PROOF OF SERVICE**

*Moonracer Inc., d/b/a Synaptis v. Jordon N. Collard*

North Carolina Superior Court Case No. 13 CVS 7199

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Francisco in the office of a member of the bar of this court at whose direction the service was made. My business address is Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

On June 17, 2013, I served the following document(s):

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

**SUBPOENA (ISSUED BY WAKE COUNTY SUPERIOR COURT, N.C.)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated below:

Susan H. Hargrove          Attorney for Defendant
SMITH ANDERSON
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina, 27601
Telephone: 919.821.1220

☐   **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐   **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

☒   **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Newport Beach, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐   **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

     ☐   the written confirmation of counsel in this action:

     ☐   [State Court motion, opposition or reply only] in accordance with Code of Civil Procedure section 1005(b):

1

1 ☐ [Federal Court] in accordance with the written confirmation of counsel in this action and order of the court:

2

3 ☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed on the attached service

4 list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

5 ☒ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

6

7 ☐ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and

8 correct.

9 Executed on June 17, 2013, at San Francisco, CA.

10

Sarah C. Osterhaus

11

12

13

14 12538870.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Christophr M. Ahearn, SBN 239089<br>OGLETREE DEAKINS NAS SMOAK & STEWART, P.C.<br>Steuart Tower, Suite 1300<br>One Market Plaza<br>San Francisco, CA 94105<br>TELEPHONE NO.: 415-442-4810    FAX NO.: 415-442-4870<br>E-MAIL ADDRESS: chris.ahearn@odnss.com<br>ATTORNEY FOR (Name): Moonracer Inc., d/b/a Synaptis | |

Court for county in which discovery is to be conducted:
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister
MAILING ADDRESS: 400 McAllister
CITY AND ZIP CODE: San Francisco, CA 94102-4512
BRANCH NAME: Downtown Superior

Court in which action is pending:
Name of Court: North Carolina Wake County Superior Court
STREET ADDRESS: 316 Fayetteville Street
MAILING ADDRESS: 316 Fayetteville Street
CITY, STATE, AND ZIP CODE: Raleigh, NOrth Carolina 27601
COUNTRY:

| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis | CALIFORNIA CASE NUMBER (if any assigned by court): |
|---|---|
| DEFENDANT/RESPONDENT: Jordan N. Collard | |

| **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA** | CASE NUMBER (of action pending outside California):<br>13 CVS 7199 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):
IT Convergence, c/o Mary Piciocchi, Registgered Agent, 3150 Porter Drive, Palo Alto, CA 94304

1. **YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS** in this action at the following date, time, and place:

| Date: June 28, 2013  Time: 11:00 a.m  Address: Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105 |
|---|

  a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)

  b. ☒ You are ordered to produce the documents, electronically stored information, and things described in item 3.

  c. This deposition will be recorded stenographically ☐ through the instant visual display of testimony and by ☒ audiotape  ☒ videotape.

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents, electronically stored information, and things to be produced and any testing or sampling being sought are described as follows (if electronically stored information is required, the form or forms in which each type of information is to be produced may be specified): See Attached Subpoena

  ☐ Continued on Attachment 3 (use form MC-025).

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows: See Attached Subpoena

  ☐ Continued on Attachment 4 (use form MC-025).

5. Attorneys for the parties to this action or parties without attorneys are (name, address, telephone number, and name of party represented): Christopher M. Ahearn, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Steuart Tower, One Market Plaza, Suite 1300, San Francisco, CA 94105, Telephone: 415-536-3456, Moonracer Inc., d/b/a Synaptis

  ☒ Continued on Attachment 5 (use form MC-025).

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-045 [Rev. January 1, 2012] | **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA** | Code of Civil Procedure, §§ 2029.100-900,<br>2020.510, 2025.220, 2025.230, 2025.260,<br>2025.620; Government Code, § 68097.1<br>Legal<br>Solutions<br>Plus |
|---|---|---|

| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Jordan N. Collard | 13 CVS 7199 |

6. [x] Other terms or provisions from out-of-state subpoena, if any (specify):
   See Attached Subpoena

   [ ] Continued on Attachment 6 (use form MC-025).

7. If you have been served with this subpoena as a custodian of consumer or employee records under Code of Civil Procedures section 1985.3 or 1985.6 and a motion to quash or an objection has been served on you, a court order or agreement of the parties, witnesses, and consumer or employee affected must be obtained before you are required to produce consumer or employee records.

8. At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.

---

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

---

Date Issued: June 17, 2013

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Christopher M. Ahearn                    Attorney for Moonracer, Inc. (dba Synaptis)
_____                _____
(TYPE OR PRINT NAME)                     (TITLE)

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS**

1. I served this Deposition Subpoena for Personal Appearance and Production of Documents, Electronically Stored Information, and Things in Action Pending Outside California by personally delivering a copy to the person served as follows:
   a. Person served (name):
   b. Address where served:

   c. Date of delivery:                    d. Time of delivery:
   e. Witness fees and mileage both ways (check one):
      (1) [ ] were paid. Amount: . . . . . . . . . . $ _____
      (2) [ ] were not paid.
      (3) [ ] were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was (specify): $ _____
   f. Fee for service: . . . . . . . . . . . . . . . . . . . . . $ _____

2. I received this subpoena for service on (date):

3. [ ] I also served a completed Proof of Service of Notice to Consumer or Employee and Objection (form SUBP-025) by personally delivering a copy to the person served as described in 1 above.

4. Person serving:
   a. [ ] Not a registered California process server
   b. [ ] California sheriff or marshal
   c. [ ] Registered California process server
   d. [ ] Employee or independent contractor of a registered California process server
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b)
   f. Name, address, telephone number, and, if applicable, county of registration and number:

| I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Date: | (For California sheriff or marshal use only) I certify that the foregoing is true and correct. Date: |
|---|---|
| ▶ _____ (SIGNATURE) | ▶ _____ (SIGNATURE) |

SUBP-045 [Rev. January 1, 2012]    **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**    Page 2 of 2

Case 5:13-cv-01045-BO Document 1-1 Filed 06/21/13 Page 90 of 111

| SHORT TITLE: Moonracer In., d/b/a Synaptis v. Jordan N. Collard | CASE NUMBER: 13 CVS 7199 |
|---|---|

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

Lori P. Jones, JORDAN PRICE WALL GRAY JONES & CARLTON, 1951 Clark Avenue, Raleigh, North Carolina 27605-0669, Telephone 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, Representing Moonracer Inc. d/b/a Synaptis

Susan H. Hargrove, SMITH ANDERSON, 150 Fayetteville Street, Suite 2300, Raleigh, North Carolina, 27601, Telephone: 919.821.1220, Representing Jordan N. Collard

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
Plus

Case 5:13-cv-00455-BO   Document 1-1   Filed 06/24/13   Page 91 of 111

# STATE OF NORTH CAROLINA

_____WAKE_____ County

FILED

2013 JUN 14 PM 1: 40

WAKE COUNTY, C.S.C.

BY

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Additional File Numbers

**SUBPOENA**

G.S. 1A-1, Rule 45; G.S. 8-59

Moonracer, Inc. d/b/a Synaptis

**VERSUS**

Jordan Collard

| Party Requesting Subpoena ☒ State/Plaintiff ☐ Defendant | NOTE TO PARTIES NOT REPRESENTED BY COUNSEL: Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge. |
|---|---|

| TO | Name And Address Of Person Subpoenaed | Alternate Address |
|---|---|---|
| | IT Convergence<br>c/o Mary Piciocchi, Registered Agent<br>3150 Porter Drive<br>Palo Alto, CA 94304 | IT Convergence<br>c/o Patrick Krause, President<br>805 Veterans Blvd #216<br>Redwood City, CA 94063 |
| | Telephone No. | Telephone No.<br>415-962-8601 |

**YOU ARE COMMANDED TO:** _(check all that apply):_

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☒ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

☐ **See attached list.** _(List here if space sufficient)_

Pursuant to Rule 30(b)(6) of the North Carolina Rules of Civil Procedure, IT Convergence is hereby required to designate one or more officers, directors or managing agents, or other persons who consent to testify on behalf of IT Convergence, to testify regarding the subjects set forth on Exhibit A attached hereto. Further, you are required to produce any and all documents and communications, including e-mail and other correspondence, between IT Convergence and Jordan Collard since September 28, 2009, regarding the opportunity for Collard's employment with IT Convergence; any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard; any and all communications by IT Convergence with Jordan Collard regarding Collard's role at Moonracer, Inc. d/b/a Synaptis; any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis; any and all communications by IT Convergence with Jordan Collard regarding Jordan Collard's involvement with Oracle UPK while employed with IT Convergence; all job descriptions for positions at IT Convergence offered to or held by Collard.

| Name And Location Of Court/Place Of Deposition/Place To Produce | Date To Appear/Produce |
|---|---|
| Law Offices of Ogletree Deakins | 06/28/2013 |
| Steuart Tower, Suite 1300, One Market Plaza | Time To Appear/Produce |
| San Francisco          CA          94105 | 2:00 p.m. Eastern Standard Time   ☐ AM ☒ PM |

| Name And Address Of Applicant Or Applicant's Attorney | Date |
|---|---|
| Paul T. Flick | 6/14/13 |
| Jordan Price Wall Gray Jones & Carlton, PLLC | Signature |
| P.O Box 10669,    Raleigh,    NC    27605 | |

| Telephone No. Of Applicant Or Applicant's Attorney | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court | ☒ Superior Court Judge |
|---|---|---|---|---|
| 919-828-2501 | ☐ Magistrate | ☐ Attorney/DA | ☐ District Court Judge | |

## RETURN OF SERVICE

I certify this subpoena was received and served on the person subpoenaed as follows:

By ☐ personal delivery.      ☐ registered or certified mail, receipt requested and attached.

☐ telephone communication by Sheriff _(use only for a witness subpoenaed to appear and testify)._

☐ telephone communication by local law enforcement agency _(use only for a witness subpoenaed to appear and testify in a criminal case)._

**NOTE TO COURT:** _If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena._

☐ I was unable to serve this subpoena. Reason unable to serve: _____

| Service Fee | ☐ Paid<br>☐ Due | Date Served | Name Of Authorized Server (Type Or Print) | Signature Of Authorized Server | Title |
|---|---|---|---|---|---|
| $ | | | | | |

**NOTE TO PERSON REQUESTING SUBPOENA:** _A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases._

_(Please See Reverse Side)_

AOC-G-100, Rev. 5/13
© 2013 Administrative Office of the Courts

**NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).**

**(c) Protection Of Persons Subject To Subpoena**

(1) <u>Avoid undue burden or expense.</u> - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) <u>For production of public records or hospital medical records.</u> - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) <u>Written objection to subpoena.</u> - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:

    a. The subpoena fails to allow reasonable time for compliance.
    b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
    c. The subpoena subjects a person to an undue burden or expense.
    d. The subpoena is otherwise unreasonable or oppressive.
    e. The subpoena is procedurally defective.

(4) <u>Order of court required to override objection.</u> - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) <u>Motion to quash or modify subpoena.</u> - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) <u>Order to compel; expenses to comply with subpoena.</u> - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) <u>Trade secrets; confidential information.</u> - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person on whose behalf the subpoena is issued or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) <u>Order to quash; expenses.</u> - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties In Responding To Subpoena**

(1) <u>Form of response.</u> - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) <u>Form of producing electronically stored information not specified.</u> - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) <u>Electronically stored information in only one form.</u> - The person responding need not produce the same electronically stored information in more than one form.

(4) <u>Inaccessible electronically stored information.</u> - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a). The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) <u>Specificity of objection.</u> - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

---

**INFORMATION FOR WITNESS**

**NOTE:** *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

**DUTIES OF A WITNESS**

- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 5/13
© 2013 Administrative Office of the Courts

## EXHIBIT A

1. Any and all communications with Jordan Collard since September 28, 2009, regarding the opportunity for his employment with IT Convergence.

2. Any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard.

3. The nature and scope of any position of employment offered to Jordan Collard by IT Convergence, including the duties and responsibilities of each position.

4. Any and all communications by IT Convergence with Jordan Collard regarding his role at Moonracer, Inc. d/b/a Synaptis.

5. Any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis.

6. The manner in which IT Convergence utilizes Oracle UPK in its business.

7. The manner in which Jordan Collard may be involved with Oracle UPK while employed by IT Convergence.

8. The existence and content of any job descriptions for any employment position offered to Jordan Collard by IT Convergence.

**PROOF OF SERVICE**

· *Moonracer Inc., d/b/a Synaptis v. Jordon N. Collard*
North Carolina Superior Court Case No. 13 CVS 7199

1

2

3    I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Francisco in the office of a member of the bar of this court at whose direction the service was made. My business address is Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

4

5

6    On June 17, 2013, I served the following document(s):

7    **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

8

9    **SUBPOENA (ISSUED BY WAKE COUNTY SUPERIOR COURT, N.C.)**

10   by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated below:

11

12   Susan H. Hargrove                    Attorney for Defendant
     SMITH ANDERSON

13   150 Fayetteville Street, Suite 2300
     Raleigh, North Carolina, 27601

14   Telephone: 919.821.1220

15

16   ☐   **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

17

18

19   ☐   **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

20

21   ☒   **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Newport Beach, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

22

23

24

25   ☐   **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

26

27        ☐   the written confirmation of counsel in this action:

28        ☐   [State Court motion, opposition or reply only] in accordance with Code of Civil Procedure section 1005(b):

1

1     ☐    [Federal Court] in accordance with the written confirmation of counsel in
      this action and order of the court:

2

3   ☐   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused the
documents to be sent to the person[s] at the e-mail addresses listed on the attached service

4   list. I did not receive, within a reasonable time after the transmission, any electronic
message or other indication that the transmission was unsuccessful.

5   ☒   **(State)**    I declare under penalty of perjury under the laws of the State of California that
the above is true and correct.

6

7   ☐   **(Federal)**  I declare that I am employed in the office of a member of the State Bar of this
Court at whose direction the service was made. I declare under penalty of
perjury under the laws of the United States of America that the above is true and

8   correct.

9   Executed on June 17, 2013, at San Francisco, CA.

10  _____    _Sarah C. Osterhaus_

11  Sarah C. Osterhaus

12

13

14                                                  12538870.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Christophr M. Ahearn, SBN 239089<br>OGLETREE DEAKINS NAS SMOAK & STEWART, P.C.<br>Steuart Tower, Suite 1300<br>One Market Plaza<br>San Francisco, CA 94105<br>TELEPHONE NO.: 415-442-4810    FAX NO.: 415-442-4870<br>E-MAIL ADDRESS: chris.ahearn@odnss.com<br>ATTORNEY FOR (Name): Moonracer Inc., d/b/a Synaptis | |

Court for county in which discovery is to be conducted:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister
MAILING ADDRESS: 400 McAllister
CITY AND ZIP CODE: San Francisco, CA 94102-4512
BRANCH NAME: Downtown Superior

Court in which action is pending:
Name of Court: North Carolina Wake County Superior Court
STREET ADDRESS: 316 Fayetteville Street
MAILING ADDRESS: 316 Fayetteville Street
CITY, STATE, AND ZIP CODE: Raleigh, North Carolina 27601
COUNTRY:

| | CALIFORNIA CASE NUMBER (if any assigned by court): |
|---|---|
| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis<br><br>DEFENDANT/RESPONDENT: Jordan N. Collard | |
| **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA** | CASE NUMBER (of action pending outside California):<br>13 CVS 7199 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO (name, address, and telephone number of deponent, if known):
IT Convergence, c/o Mary Piciocchi, Regisgtered Agent, 3150 Porter Drive, Palo Alto, CA 94304

1. YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:

   Date: June 28, 2013  Time: 11:00 a.m  Address: Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105

   a. [x] As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)
   b. [x] You are ordered to produce the documents, electronically stored information, and things described in item 3.
   c. This deposition will be recorded stenographically [ ] through the instant visual display of testimony and by [ ] audiotape [ ] videotape.

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents, electronically stored information, and things to be produced and any testing or sampling being sought are described as follows (if electronically stored information is required, the form or forms in which each type of information is to be produced may be specified): See Attachment 3, which incorprates the corresponding terms of the attached subpoena issued by the General Court of Justice of the State of North Carolina, Superior Court Division, Wake County.
   [x] Continued on Attachment 3 (use form MC-025).

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows: See Attachement 4, which incorprates the corresponding terms of the attached subpoena issued by the General Court of Justice of the State of North Carolina, Superior Court Division, Wake County.
   [x] Continued on Attachment 4 (use form MC-025).

5. Attorneys for the parties to this action or parties without attorneys are (name, address, telephone number, and name of party represented): Christopher M. Ahearn, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Steuart Tower, One Market Plaza, Suite 1300, San Francisco, CA 94105, Telephone: 415-536-3456, Moonracer Inc., d/b/a Synaptis
   [x] Continued on Attachment 5 (use form MC-025).

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-045 [Rev. January 1, 2012]

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

Code of Civil Procedure, §§ 2029.100–900, 2020.510, 2025.220, 2025.230, 2025.250, 2025.620; Government Code, § 68097.1
Legal Solutions Plus

| PLAINTIFF/PETITIONER: Moonracer Inc., d/b/a Synaptis | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Jordan N. Collard | 13 CVS 7199 |

6. [x] Other terms or provisions from out-of-state subpoena, if any *(specify)*:
    See attached subpoena, issued by the General Court of Justice of the State of North
    Carolina, Sup. Ct. Div., Wake County which is incorporated herein by reference.
    [ ] Continued on Attachment 6 *(use form MC-025)*.

7. If you have been served with this subpoena as a custodian of consumer or employee records under Code of Civil
Procedures section 1985.3 or 1985.6 *and* a motion to quash or an objection has been served on you, a court order or
agreement of the parties, witnesses, *and* consumer or employee affected must be obtained before you are required to
produce consumer or employee records.

8. At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition;
later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you
sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at
the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the
court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of
your residence. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.

> **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE
> FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: June 19, 2013

                                                       (SIGNATURE OF PERSON ISSUING SUBPOENA)

Christopher M. Ahearn            Attorney for Moonracer, Inc. (dba Synaptis)
      (TYPE OR PRINT NAME)                                 (TITLE)

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents, Electronically Stored Information, and
Things in Action Pending Outside California* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*:

   b. Address where served:

   c. Date of delivery:                         d. Time of delivery:

   e. Witness fees and mileage both ways *(check one)*:
     (1) [ ] were paid. Amount: .......... $ _____
     (2) [ ] were not paid.
     (3) [ ] were tendered to the witness's public entity employer as required by Government Code section 68097.2. The
          amount tendered was *(specify)*: $ _____

   f. Fee for service: ..................... $ _____

2. I received this subpoena for service on *(date)*:

3. [ ] I also served a completed *Proof of Service of Notice to Consumer or Employee and Objection* (form SUBP-025)
       by personally delivering a copy to the person served as described in 1 above.

4. Person serving:
   a. [ ] Not a registered California process server
   b. [ ] California sheriff or marshal
   c. [ ] Registered California process server
   d. [ ] Employee or independent contractor of a registered California process server
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b)
   f. Name, address, telephone number, and, if applicable, county of registration and number:

| I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.<br>Date: | **(For California sheriff or marshal use only)**<br>I certify that the foregoing is true and correct.<br>Date: |
|---|---|
| ▶ _____<br>         (SIGNATURE) | ▶ _____<br>         (SIGNATURE) |

SUBP-045 [Rev. January 1, 2012]     **DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND
PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED
INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

| SHORT TITLE: Moonracer Inc., d/b/a Synaptis v. Jordan N. Collard | CASE NUMBER: 13 CVS 7199 |
| --- | --- |

**ATTACHMENT** *(Number):* 3

*(This Attachment may be used with any Judicial Council form.)*

You are required to produce:

1. any and all documents and communications, including e-mail and other correspondence, between IT Convergence and Jordan Collard since September 28, 2009, regarding the opportunity for Collard's employment with IT Convergence;

2. any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard;

3. any and all communications by IT Convergence with Jordan Collard regarding Collard's role at Moonracer, Inc. d/b/a Synaptis;

4. any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis;

5. any and all communications by IT Convergence with Jordan Collard regarding Jordan Collard's involvement with Oracle UPK while employed with IT Convergence; and

6. all job descriptions for positions at IT Convergence offered to or held by Collard.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
ⓒ Plus

Case 5:13-cv-00455-BO Document 1-1 Filed 06/24/13 Page 99 of 111

MC-025

| SHORT TITLE: Moonracer Inc., d/b/a Synaptis v. Jordan —N. Collard | CASE NUMBER: 13 CVS 7199 |
|---|---|

**ATTACHMENT** *(Number):* 4

*(This Attachment may be used with any Judicial Council form.)*

Pursuant to Rule 30(b)(6) of the North Carolina Rules of Civil Procedure, IT Convergence is hereby required to designate one or more officers, directors or managing agents, or other persons who consent to testify on behalf of IT Convergence, to testify regarding the subjects set forth below:

1. Any and all communications with Jordan Collard since September 28, 2009, regarding the opportunity for his employment with IT Convergence.

2. Any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard.

3. The nature and scope of any position of employment offered to Jordan Collard by IT Convergence, including the duties and responsibilities of each position.

4. Any and all communications by IT Convergence with Jordan Collard regarding his role at Moonracer, Inc. d/b/a Synaptis.

5. Any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis.

6. The manner in which IT Convergence utilizes Oracle UPK in its business.

7. The manner in which Jordan Collard may be involved with Oracle UPK while employed by IT Convergence.

8. The existence and content of any job descriptions for any employment position offered to Jordan Collard by IT Convergence.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
Plus

Case 5:13-cv-00455-BO   Document 1-1   Filed 06/24/13   Page 100 of 111

| SHORT TITLE: Moonracer In., d/b/a Synaptis v. Jordan N. ⌐Collard | CASE NUMBER: 13 CVS 7199 |
|---|---|

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

Lori P. Jones, JORDAN PRICE WALL GRAY JONES & CARLTON, 1951 Clark Avenue, Raleigh, North Carolina 27605-0669, Telephone 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, Representing Moonracer Inc. d/b/a Synaptis

Susan H. Hargrove, SMITH ANDERSON, 150 Fayetteville Street, Suite 2300, Raleigh, North Carolina, 27601, Telephone: 919.821.1220, Representing Jordan N. Collard

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _____ of _____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
⚖ Plus

Case 5:13-cv-00455-BO   Document 1-1   Filed 06/24/13   Page 101 of 111

# STATE OF NORTH CAROLINA

WAKE _____ County

FILED

2013 JUN 14 PM 1:40

WAKE COUNTY, C.S.C.

BY _____

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Additional File Numbers

Moonracer, Inc. d/b/a Synaptis

**VERSUS**

Jordan Collard

## SUBPOENA

G.S. 1A-1, Rule 45; G.S. 8-59

| Party Requesting Subpoena ☒ State/Plaintiff ☐ Defendant | NOTE TO PARTIES NOT REPRESENTED BY COUNSEL: *Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge.* |
|---|---|

| TO | Name And Address Of Person Subpoenaed | Alternate Address |
|---|---|---|
| | IT Convergence | IT Convergence |
| | c/o Mary Piciocchi, Registered Agent | c/o Patrick Krause, President |
| | 3150 Porter Drive | 805 Veterans Blvd #216 |
| | Palo Alto, CA 94304 | Redwood City, CA 94063 |
| | Telephone No. | Telephone No. |
| | | 415-962-8601 |

**YOU ARE COMMANDED TO:** *(check all that apply):*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☒ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

☐ See attached list. *(List here if space sufficient)*

Pursuant to Rule 30(b)(6) of the North Carolina Rules of Civil Procedure, IT Convergence is hereby required to designate one or more officers, directors or managing agents, or other persons who consent to testify on behalf of IT Convergence, to testify regarding the subjects set forth on Exhibit A attached hereto. Further, you are required to produce any and all documents and communications, including e-mail and other correspondence, between IT Convergence and Jordan Collard since September 28, 2009, regarding the opportunity for Collard's employment with IT Convergence; any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard; any and all communications by IT Convergence with Jordan Collard regarding Collard's role at Moonracer, Inc. d/b/a Synaptis; any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis; any and all communications by IT Convergence with Jordan Collard regarding Jordan Collard's involvement with Oracle UPK while employed with IT Convergence; all job descriptions for positions at IT Convergence offered to or held by Collard.

| Name And Location Of Court/Place Of Deposition/Place To Produce | Date To Appear/Produce |
|---|---|
| Law Offices of Ogletree Deakins | 06/28/2013 |
| Steuart Tower, Suite 1300, One Market Plaza | Time To Appear/Produce |
| San Francisco  CA  94105 | 2:00 p.m. Eastern Standard Time  ☐ AM ☒ PM |

| Name And Address Of Applicant Or Applicant's Attorney | Date |
|---|---|
| Paul T. Flick | 6/14/13 |
| Jordan Price Wall Gray Jones & Carlton, PLLC | Signature |
| P.O Box 10669,  Raleigh,  NC  27605 | |
| Telephone No. Of Applicant Or Applicant's Attorney | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court ☒ Superior Court Judge |
| 919-828-2501 | ☐ Magistrate ☐ Attorney/DA ☐ District Court Judge |

## RETURN OF SERVICE

I certify this subpoena was received and served on the person subpoenaed as follows:

By ☐ personal delivery.  ☐ registered or certified mail, receipt requested and attached.

☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify).*

☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case).*

NOTE TO COURT: *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*

☐ I was unable to serve this subpoena. Reason unable to serve: _____

| Service Fee | Date Served | Name Of Authorized Server (Type Or Print) | Signature Of Authorized Server | Title |
|---|---|---|---|---|
| $ ☐ Paid ☐ Due | | | | |

NOTE TO PERSON REQUESTING SUBPOENA: *A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.*

(Please See Reverse Side)

AOC-G-100, Rev. 5/13
© 2013 Administrative Office of the Courts

NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).

**(c) Protection Of Persons Subject To Subpoena**

(1) <u>Avoid undue burden or expense.</u> - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) <u>For production of public records or hospital medical records.</u> - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) <u>Written objection to subpoena.</u> - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:

    a. The subpoena fails to allow reasonable time for compliance.
    b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
    c. The subpoena subjects a person to an undue burden or expense.
    d. The subpoena is otherwise unreasonable or oppressive.
    e. The subpoena is procedurally defective.

(4) <u>Order of court required to override objection.</u> - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) <u>Motion to quash or modify subpoena.</u> - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) <u>Order to compel; expenses to comply with subpoena.</u> - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) <u>Trade secrets; confidential information.</u> - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) <u>Order to quash; expenses.</u> - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties In Responding To Subpoena**

(1) <u>Form of response.</u> - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) <u>Form of producing electronically stored information not specified.</u> - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) <u>Electronically stored information in only one form.</u> - The person responding need not produce the same electronically stored information in more than one form.

(4) <u>Inaccessible electronically stored information.</u> - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a). The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) <u>Specificity of objection.</u> - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

NOTE: *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

**DUTIES OF A WITNESS**

- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and for travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" is to be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

## EXHIBIT A

1. Any and all communications with Jordan Collard since September 28, 2009, regarding the opportunity for his employment with IT Convergence.

2. Any and all communications regarding any position of employment with IT Convergence that was offered to Jordan Collard.

3. The nature and scope of any position of employment offered to Jordan Collard by IT Convergence, including the duties and responsibilities of each position.

4. Any and all communications by IT Convergence with Jordan Collard regarding his role at Moonracer, Inc. d/b/a Synaptis.

5. Any and all communications by IT Convergence with Jordan Collard regarding programs, methodologies and materials relating to Oracle UPK that Collard acquired while employed at Moonracer, Inc. d/b/a Synaptis.

6. The manner in which IT Convergence utilizes Oracle UPK in its business.

7. The manner in which Jordan Collard may be involved with Oracle UPK while employed by IT Convergence.

8. The existence and content of any job descriptions for any employment position offered to Jordan Collard by IT Convergence.

**PROOF OF SERVICE**
*Moonracer Inc., d/b/a Synaptis v. Jordon N. Collard*
North Carolina Superior Court Case No. 13 CVS 7199

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Francisco in the office of a member of the bar of this court at whose direction the service was made. My business address is Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

On June 19, 2013, I served the following document(s):

**DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS IN ACTION PENDING OUTSIDE CALIFORNIA**

**SUBPOENA (ISSUED BY WAKE COUNTY SUPERIOR COURT, N.C.)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated below:

Susan H. Hargrove                                  Attorney for Defendant
SMITH ANDERSON
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina, 27601
Telephone: 919.821.1220

☐ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Steuart Tower, Suite 1300, One Market Plaza, San Francisco, CA 94105.

☒ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Newport Beach, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:

☐ [State Court motion, opposition or reply only] in accordance with Code of Civil Procedure section 1005(b):

1

1        ☐        [Federal Court] in accordance with the written confirmation of counsel in
                  this action and order of the court:

2

3        ☐        **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an
                  agreement of the parties to accept service by e-mail or electronic transmission, I caused the
                  documents to be sent to the person[s] at the e-mail addresses listed on the attached service

4                 list. I did not receive, within a reasonable time after the transmission, any electronic
                  message or other indication that the transmission was unsuccessful.

5        ☒        **(State)**   I declare under penalty of perjury under the laws of the State of California that
                                the above is true and correct.

6

7        ☐        **(Federal)**  I declare that I am employed in the office of a member of the State Bar of this
                                 Court at whose direction the service was made. I declare under penalty of

8                                perjury under the laws of the United States of America that the above is true and
                                 correct.

9        Executed on June 19, 2013, at San Francisco, CA.

10

         Sarah C. Osterhaus

11

12

13

14                                                                                                    12538870.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    2

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7199

MOONRACER, INC. D/B/A SYNAPTIS,

    Plaintiff,

v.

JORDAN N. COLLARD,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF DEPOSITION**

  PLEASE TAKE NOTICE that pursuant to Rules 26, 30, 30(b)(6) and 45 of the North Carolina Rules of Civil Procedure, Plaintiff Moonracer, Inc. d/b/a Synaptis, by and through the undersigned counsel, will take the deposition of IT Convergence before a notary public or some other officer duly authorized by law to take depositions and administer oaths, beginning at 2:00 p.m. EST on June 28, 2013, at the law offices of Ogletree Deakins, Steuart Tower, Suite 1300, One Market Plaza, San Francisco, California. The deposition will be by oral examination and will be recorded by stenographic and/or videotape means and will continue day to day until complete, subject to such modifications as may be mutually agreed upon by counsel attending or taking the deposition. Please see the attached subpoena which is incorporated herein by reference.

This the ___20th___ day of June, 2013.

JORDAN PRICE WALL GRAY JONES & CARLTON

Paul T. Flick
N.C. State Bar No. 13494
Lori P. Jones
N.C. State Bar No. 32872
Post Office Box 10669
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing parties, named below, with the foregoing document by placing a copy in a properly addressed envelope with adequate postage thereon, in the United States Mail, in the manner prescribed by Rule 5 of the Rules of Civil Procedure, or as otherwise directed by counsel for Plaintiffs.

Susan H. Hargrove
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
PO Box 2611
Raleigh, NC 27612
*Attorney for the Defendant*

This the 20th day of June, 2013.

JORDAN PRICE WALL GRAY JONES & CARLTON
*Counsel for Defendants*

Paul T. Flick

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 7199

MOONRACER, INC. D/B/A SYNAPTIS, )
 )
   Plaintiff, )
 )
 )
v. )
 )
 )
JORDAN N. COLLARD, )
 )
   Defendant. )
 )
 )

**NOTICE OF DEPOSITION
OF JORDAN N. COLLARD**

 PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the North Carolina Rules of Civil Procedure, the Plaintiff Moonracer, Inc. d/b/a Synaptis, by and through the undersigned counsel, will take the deposition of Jordan N. Collard before a notary public or some other officer duly authorized by law to take depositions and administer oaths, beginning at 11:00 a.m. EST on June 28, 2013, law offices of Ogletree Deakins, Steuart Tower, Suite 1300, One Market Plaza, San Francisco, California. The deposition will be by oral examination and will be recorded by stenographic and/or videotape means and will continue day to day until complete, subject to such modifications as may be mutually agreed upon by counsel attending or taking the deposition.

 This the _20th_ day of June, 2013.

    JORDAN PRICE WALL GRAY JONES & CARLTON

    _Paul Flick_

    Paul T. Flick
    N.C. State Bar No. 13494
    Lori P. Jones
    N.C. State Bar No. 32872
    Post Office Box 10669
    Raleigh, North Carolina 27605
    Telephone: (919) 828-2501
    *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing parties, named below, with the foregoing document by placing a copy in a properly addressed envelope with adequate postage thereon, in the United States Mail, in the manner prescribed by Rule 5 of the Rules of Civil Procedure, or as otherwise directed by counsel for Plaintiffs.

Susan H. Hargrove
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
PO Box 2611
Raleigh, NC 27612
*Attorney for the Defendant*

This the 20th day of June, 2013.

JORDAN PRICE WALL GRAY JONES & CARLTON
*Counsel for Defendants*

_____
Paul T. Flick