IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-455-BO

| | | |
|---|---|---|
| MOONRACER, INC. d/b/a SYNAPTIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| JORDAN N. COLLARD, | ) | |
| Defendant. | | |

This cause comes before the Court on plaintiff's motion for preliminary injunction. A hearing was held on the matter before the undersigned on August 27, 2013, at Elizabeth City, North Carolina. For the reasons discussed below, the Court denies plaintiff's request for preliminary injunctive relief.

## BACKGROUND

Plaintiff (Synaptis) is a small information technology company located in Cary, North Carolina who employed defendant from September 2009 through April 15, 2013. Defendant began his employment with Synaptis as a business development manager and left as Vice President of Sales. Defendant's employment contract contained a non-competition provision. After leaving Synaptis, defendant took a job in Nevada with a company who Synaptis contends is a direct competitor. Synaptis further contends that defendant is engaged in duties that require him to use confidential knowledge and proprietary information he acquired while at Synaptis. Synaptis' business relates to providing consulting, support, and training for business related software manufactured by Oracle, called a User Productivity Kit.

Synaptis filed suit in Wake County Superior Court alleging defendant had breached his

employment contract and requesting a temporary restraining order (TRO) and preliminary injunction. Superior Court Judge Manning denied plaintiff's request for TRO and, prior to the hearing on plaintiff's motion for preliminary injunction, defendant removed the action based on this Court's diversity jurisdiction over the instant dispute. 28 U.S.C. §§ 1441; 1332.

## DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Green*, 533 U.S. 674 (2008). A movant must make a clear showing of *each* of four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (holding that the *Blackwelder* balance-of-hardships test no longer applies in light of *Winter*) *vacated on other grounds*, 130 S. Ct. 2371 (2010) (memorandum opinion). Applying the standard announced in *Winter*, the Court finds that Synaptis has failed to establish that it is entitled to extraordinary relief.

Synaptis has not demonstrated that it is likely to succeed on the merits. In order to be valid and enforceable under North Carolina law, restrictive covenants between employers and employees must be in writing, based upon valuable consideration, reasonably necessary for the protection of legitimate business interests, reasonable as to time and territory, and not otherwise against public policy. *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 402-3 (1983). Covenants not to compete must withstand strict scrutiny, and any ambiguities must be drawn against the drafter. *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C.App. 315, 323 (2008) (citations

2

omitted). The party who seeks to enforce a covenant not to compete has the burden to show that the covenant is reasonable, and non-competition covenants are generally not looked upon favorably in modern law. *Hartman v. W.H. Odell and Assocs., Inc.*, 117 N.C.App. 307, 311 (1994).

Defendant contends that Synaptis has not demonstrated that its non-competition provision is reasonable as to scope and geography,[1] and the Court agrees. The non-competition provision prohibits defendant from working anywhere in the United States for one year if the employment is both with a competitor of Synaptis and requires defendant to "engage in actions similar to those actions undertaken" while an employee of Synaptis and to draw on specialized training or skills received while working at Synaptis. [DE 1-1 at 28].

The non-competition agreement is overbroad as it prohibits defendant from engaging in business relating to a product that Synaptis does not own and prohibits defendant while working for a competitor from engaging in "similar actions" – a term not defined by the agreement. *See Henley Paper Co. v. McAllister*, 253 N.C. 529, 534-35 (1960) (non-competition agreement that "excludes defendant from too much territory and from too many activities" is void and unenforceable). As was demonstrated at the hearing, the business in which defendant was engaged for Synaptis was neither highly specialized nor did it require application of technical skills or training. While working for Synaptis, defendant engaged in cold calling to recruit customers, selling to them a service product that would assist them in using software manufactured not by Synaptis, but by Oracle. Because a purchaser of the Oracle product could

---

[1] Defendant does not challenge the remaining requirements of an enforceable covenant not to compete.

merely learn how to use the product him or herself, and cold calling is certainly not a skill which Synaptis could legitimately prevent defendant from engaging in, the Court is unconvinced that anything about defendant's position with Synaptis was sufficiently specialized to warrant enforcement of the non-competition agreement as it relates to defendant's current position.

The non-competition provision is further overbroad as it relates to defendant's sales activity and Synaptis' protection of its customer base. The non-competition provision here would prevent defendant from "draw[ing] upon industry or current or potential customer contracts developed at Synaptis." [DE 1-1 at 28]. While Synaptis could arguably have a legitimate business interest in preventing defendant from continuing business relationships with specific customers that he cultivated while at Synaptis, the non-competition provision is not limited to those customers with whom defendant had a specific relationship or those who defendant cultivated during a prescribed period of time. *See e.g. Akzo Nobel Coatings Inc. v. Rogers*, 2011 NCBC 41, 2011 WL 5316772 *16 (N.C. Super. Ct. Nov. 3, 2011) (provision is overbroad where not limited to specific customers of former employee). Because the non-competition provision as written is not specifically tailored to protect the legitimate business interests of Synaptis, it is overbroad and therefore unenforceable.[2]

While non-competition agreements containing nationwide geographical restrictions have certainly been found to be enforceable, Synaptis has failed at this stage to present sufficient evidence to support a basis for finding a nationwide restriction reasonable. In essence, Synaptis argues that because it conducts business online and the nature of its business is "virtual," a

---

[2]In light of the lack of technical specialty involved in defendant's work, the Court queries whether, after terminating defendant for, *inter alia*, poor sales performance, Synaptis is justifiably concerned about defendant's work for an alleged competitor.

4

nationwide restriction is per se reasonable. "A restriction as to territory is reasonable *only* to the extent it protects the legitimate interests of the employer in *maintaining* his customers." *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) (emphasis added). Though defendant may have "interacted with customers and potential customers" all over the United States, [DE 34 at 8], such statement is insufficient to show that a nationwide restriction is necessary in order for Synaptis to *maintain* its customers. Further, the Court is not persuaded by Synaptis' argument that, because defendant served as Vice President of Sales, he can necessarily be reasonably prevented from working for an information technology company where defendant would undertake "similar activities" anywhere in the United States.

Because these overbroad terms are not a "distinctly separable part of [the] covenant" the entire covenant not-to-compete must fail. *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp.2d 664, 672 (M.D.N.C. 2009). As Synaptis has failed to demonstrate that it is likely to succeed on the merits, the Court need not address the remaining *Winter* factors. Even assuming, however, *arguendo*, that the Court were to find that Synaptis had demonstrated a likelihood of success on the merits, for many of the same reasons as outlined above Synaptis has failed to show irreparable harm, that the balance of equities tip in its favor, or that an injunction would be in the public interest in this instance.

Synaptis contends in its complaint that defendant is utilizing proprietary and confidential information and that in the absence of an injunction it would suffer irreparable harm. Synaptis has testified, however, that the techniques used by defendant in selling Synaptis services, email and phone calls, are not unique to Synaptis and defendant has testified that the proprietary services Synaptis provides, asking customers a series of questions regarding content management needs,

are simply adapted from a defined instructional design methodology taught in universities. Mullahy Dep. 125; 162-63; Collard Dep. 59. In the absence of a showing that any of its methods or techniques are truly proprietary, the Court is not persuaded that irreparable harm would occur in the absence of an injunction. The balance of equities do not tip in Synaptis' favor as defendant contends that he is not in possession of any of Synaptis' documents, has agreed not to use or disclose any confidential information, and defendant's new employer has agreed to ensure that it does not solicit related business from Synaptis. [DE 30-5]. Finally, an injunction would not be in the public interest as Synaptis has failed to demonstrate a real threat to its legitimate business interests and preliminary enforcement of a potentially overbroad non-competition agreement would only result in an undue restraint of trade. Finding no basis upon which such an extraordinary and drastic remedy is appropriate, Synaptis' motion for preliminary injunction is properly denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction is DENIED. For good cause shown, defendant's motion to seal [DE 5] is GRANTED. The Court will consider the remaining pending motions once they have become ripe for adjudication.

SO ORDERED, this __4__ day of September, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE