IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CONSOLIDATED ACTION
No. 5:13-CV-455-BO

MOONRACER, INC. d/b/a SYNAPTIS, )
      Plaintiff, )
       )
       )
      v. )      No. 5:13-CV-455-BO
       )
JORDAN N. COLLARD, )
      Defendant. )

&

IT CONVERGENCE, )
      Plaintiff, )
       )
      v. )      No. 5:13-CV-852-BO
       )
MOONRACER, INC. d/b/a SYNAPTIS, )
      Defendant. )

## ORDER

    This cause comes before the Court on plaintiff Synaptis' motion for summary judgment.

Also pending is Synaptis' motion to compel deposition, mediation, and for sanctions. The

appropriate responses and replies have been filed and the motions are ripe for adjudication. For

the reasons discussed below, the motion for summary judgment is granted and the motion to

compel is denied.

## BACKGROUND

    Synaptis is an information technology company located in Cary, North Carolina. Synaptis

provides consulting, support, and training for business related software manufactured by Oracle,

called a User Productivity Kit. Synaptis employed Jordan Collard from September 2009 through

April 15, 2013, when it terminated Collard's employment. Collard began his employment with Synaptis as a business development manager and left as Vice President of Sales. Collard signed a conditions of employment agreement with Synaptis that contains non-competition, non-solicitation, and confidentiality provisions (non-compete agreement). After leaving Synaptis, Collard took a job in Nevada with IT Convergence, a company which Synaptis contends is a direct competitor.

Synaptis filed the instant action in Wake County Superior Court alleging a claim for breach of contract and seeking a temporary restraining order and preliminary injunction which would prevent Collard from working for IT Convergence or alternatively enforce the non-competition agreement for a period of one year from the date of the injunction. Superior Court Judge Manning denied Synaptis' request for a temporary restraining order and Collard removed the action to this Court under its diversity jurisdiction. 28 U.S.C. § 1332. This Court denied Synaptis' motion for preliminary injunction. In his answer, Collard alleges the following counterclaims against Synaptis: breach of contract; violation of the North Carolina Wage & Hour Act, N.C. Gen.Stat. § 95-25.2(16); breach of implied covenant of good faith and fair dealing; unjust enrichment; tortious interference with contract; and unfair and deceptive trade practices.

IT Convergence filed suit against Synaptis in San Mateo County, California seeking declaratory and injunctive relief and alleging claims for intentional interference with contract and violations of California Business and Professions Code §§ 17200, *et seq*. That action was removed to the United States District Court for the Northern District of California and was subsequently transferred to this Court in light of the pending litigation between Synaptis and Collard. No. 5:13-CV-852-BO. This Court consolidated both actions by order entered February 20, 2014.

2

## DISCUSSION

I. MOTION FOR SUMMARY JUDGMENT

Synaptis seeks summary judgment in its favor on all claims against it brought by defendant Jordan Collard and plaintiff IT Convergence. A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

A. Collard's Counterclaims

Synaptis has demonstrated that it is entitled to summary judgment in its favor on each of Collard's counterclaims.

Collard's first four counterclaims – breach of contract, violation of the North Carolina Wage & Hour Act, breach of implied covenant of good faith and fair dealing, and unjust

3

enrichment – each have to do with Collard's claim that he was not paid for unused accrued vacation time, commissions, and a bonus payment pursuant to the Incentive Bonus Program.

N.C. Gen. Stat § 95-25.12 governs vacation and paid time off and requires that employers notify employees of any policy or practice that requires or results in loss or forfeiture of paid time off or vacation time. N.C. Gen. Stat. § 95-25.7 governs bonuses and commissions, and requires that such wages may not be forfeited unless the employee has been notified. N.C. Gen Stat. § 95-25.13 requires that employers make available, in writing or through a posted notice, their employment practices regarding promised wages.

The Synaptis Policies and Procedures manual, which Collard acknowledged by his signature receiving and reading on September 28, 2009, provides that "[i]n the event of a termination (voluntary or involuntary), unused [paid time off] will be immediately forfeited, and the employee will not receive a payout for unused [paid time off]." [DE 81-3 at 10; 18 of 24]. Synaptis' Fiscal Year 2010 compensation plan, which Collard acknowledged by his signature receiving, provides that "[u]pon termination . . . [employees] will be paid applicable commissions fully earned and payable as of the termination date for sales for which payments have been collected." [DE 81-3 at 20; 21of 24]. Payable commissions are defined by the document as those commissions which are 100% payable within 30 days following payment received by the customer. [DE 81-3 at 19 of 24].

Synaptis' CEO, Brad Mullahy, has submitted an affidavit stating that the policies and procedures regarding paid time off, commissions, and bonuses did not change while Collard was working at Synaptis. Mullahy Aff. ¶¶ 4, 8 [DE 81-3]. Collard cites no support for his contention that Synaptis was required to notify him of its paid time off and commission policies and procedures each year of his employment. Though Collard has submitted a declaration stating

4

that he does not recall having received any notice regarding forfeiture of unpaid vacation time or commissions [DE 80-1], such evidence in insufficient to create a genuine issue of material fact in light of Collard's signatures acknowledging receipt of each of the policies. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).

Synaptis contends that Collard has been paid for all commissions due under the compensation plan and the adjustments made thereto as reflected in the notations on the document. Mullahy Aff. ¶ 7. Collard has not come forward with evidence of any specific commission he claims he is owed under the plan, and he has failed therefore to sufficiently oppose summary judgment as to this claim. Because the record establishes that Synaptis complied with North Carolina law regarding notice of any forfeiture of wages or vacation pay, Synaptis is entitled to summary judgment on each of Collard's related counterclaims for breach of contract, violation of N.C. Wage & Hour Act, breach of implied covenant of good faith and fair dealing, and unjust enrichment.

Synaptis is further entitled to summary judgment on Collard's counterclaims for tortious interference with contract and unfair and deceptive trade practices. Both claims are based on Collard's allegation that Synaptis knew that Collard had an employment agreement with IT Convergence and that Synaptis, in attempting to enforce its non-competition provision, intentionally and without justification attempted to induce IT Convergence not to perform the agreement with Collard.

To demonstrate tortious interference with contract under North Carolina law, a party must show that:

(1) a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to the plaintiffs.

*Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 604 (2007). "[T]o maintain an action for interference with business relations in North Carolina, plaintiffs must show that defendants acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of defendants." *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 439 (1982) (internal alterations, quotation, and citation omitted).

Collard has not come forward with any evidence which would create a genuine issue of material fact as to whether Synaptis acted with malice. Though the Court has noted in its order denying Synaptis' motion for preliminary injunction that the non-competition agreement as written is not specifically tailored to protect the legitimate business interests of Synaptis, Synaptis' belief that its non-competition agreement is valid and its actions taken to enforce that agreement do not demonstrate that Synaptis acted with the requisite malice for an intentional interference with contract claim. A case from the North Carolina Court of Appeals is instructive on this issue. In *White v. Cross Sales & Engineering Company*, 177 N.C. App. 765, the court of appeals noted that "most important" to its decision on whether a former employer acted with malice sufficient to support a claim of tortious interference with contract between a former employee who was covered by a non-competition agreement and the employee's new employer were the motives of the employer. 177 N.C. App. at 769. Such motives were evinced by a statement of the former employer's division president who "believed [the company] had a valid

6

covenant not to compete which needed enforcement" and that "[i]ts motives included protecting its trade secrets and other confidential information, as well as protecting itself against unfair competition." *Id.*; *see* also Mullahy Dep. at 25 [DE 81-1] (Synaptis CEO stating that he believes he has the right to enforce his employment agreement and that he does not know it to be unenforceable as a matter of law). Court finds this reasoning persuasive and germane to this case. While Synaptis was quick to "use a stick in the form of a lawsuit." *White*, 177 N.C. App. at 769, in order to seek to prevent Collard from violating his non-competition agreement, the record simply does not support that Synaptis acted with malice sufficient to support a tortious interference with contract claim.

Similarly, the evidence in the record does not create a genuine issue of material fact as to whether Synaptis engaged in unfair and deceptive trade practices (UDTPA) under Chapter 75 of the North Carolina General Statues. "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252 (1998). A trade practice is unfair if it is immoral, unethical, oppressive, or substantially injurious. *Id.* (citation omitted). A trade practice is deceptive when it has "the tendency or capacity to mislead, or create the likelihood of deception. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (alterations and citation omitted). Whether an act is unfair or deceptive is a question of law. *Ellis v. Northern Star Co.*, 326 N.C. 219, 226 (1990).

In opposing the motion for summary judgment, Collard argues that his UDTPA claim is based on his tortious interference with contract claim, and that threatening litigation and to impose substantial costs in order to coerce a third party not to hire a former employee amount to

7

unfair and deceptive trade practices. North Carolina courts have found that actions such as false advertising, fraud, and libel *per se*, may be considered to be unfair and deceptive for purposes of UDTPA claims. *Ellis*, 326 N.C. at 225-26. Employment disputes generally fall outside the scope of the UDTPA, *Durling v. King*, 146 N.C.App. 483, 488 (2001), but where UDTPA claims have been demonstrated in the employment context, the facts have also clearly demonstrated unfair, unethical, or deceptive acts. *See e.g. Sara Lee Corp. v. Carter*, 351 N.C. 27, 33 (1999) (transactions between employee and employer were unethical and fraudulent where employee engaged in self-dealing, breach of fiduciary duty, and fraud by selling computer parts and services to his employer from companies employee owned without employer's knowledge). Here, as discussed above in relation to Collard's tortious interference with contract claim, Collard has not proffered evidence that would tend to show that Synaptis' actions in attempting to enforce its non-competition agreement rose to the level of unfair or deceptive conduct. Indeed, a "reasonable, non-negligent" interpretation of a contract term, even if it proves to be incorrect, is "insufficient to ground a UDTPA claim." *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 233 (4th Cir. 2001) (citations omitted). For these reasons, the Court holds that Synaptis is entitled to summary judgment in its favor on Collard's UDTPA claim.

## B. IT Convergence's Claims

IT Convergence, Collard's current employer, brings two claims for relief against Synaptis: intentional interference with contract under California law and for violations of the California Business and Professions Code §§ 17200, *et seq*.

8

1. *Choice of Law*

The Court must first determine whether to apply California or North Carolina law to IT Convergence's claims. IT Convergence's case against Synaptis was transferred to this district from the Northern District of California. [5:13-CV-852-BO, DE 22]. Where, as here, the defendant sought the transfer, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Al Shimari v. CACI Int'l, Inc.*, 933 F. Supp. 2d 793, 799 (E.D. Va. 2013) ("transferee court must apply the substantive law of the state in which the transferor court sits."). Thus, this Court applies California choice of law rules to determine whether California or North Carolina law applies to IT Convergence's claims.[1]

The Ninth Circuit Court of Appeals has succinctly described the California choice of law rules as follows:

> California does not apply a mechanical test to choice-of-law questions. Rather, it employs the "governmental interest analysis." Under this approach, California law will be applied unless the foreign law conflicts with California law and California and the foreign jurisdiction have significant interests in having their law applied. Where significant interests conflict, the court must assess the "comparative impairment" of each state's policies. The law applied will be that of the state whose policies would suffer the most were a different state's law applied. A separate choice-of-law inquiry must be made with respect to each issue in a case.
>
> The preceding rules apply regardless of whether the dispute arises out of contract or tort. An exception applies, however, in the case of contracts with choice-of-law provisions. California will apply the substantive law designated by the contract unless the transaction falls into either of two exceptions:
>
> 1) the chosen state has no substantial relationship to the parties or the transaction, or
>
> (2) application of the law of the chosen state would be contrary to a fundamental policy of the state.

---

[1] No party submits that, and thus the Court does not consider whether, the law of any other state might apply to IT Convergence's claims.

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) (internal citations omitted).

IT Convergence first claims that Synaptis intentionally interfered with its contract with Collard when it sought to enforce its non-competition agreement with Collard while Collard was being hired by IT Convergence. Because the elements of California's tort of intentional interference with contract and North Carolina's tort of tortious interference with contract are similar, and the Court is unaware that North Carolina has a particularly strong public policy with respect to this tort, the Court holds that California law applies to IT Convergence's first claim for relief.

IT Convergence next seeks to invalidate the non-competition provision of Collard's Special Terms and Conditions of Employment agreement with Synaptis. [DE 1-1, 5:13-CV-455-BO]. Such agreement provides that it "shall be governed by and construed in accordance with the laws of North Carolina applicable to contracts between residents of North Carolina which are wholly executed and performed in North Carolina, and no conflict-of-laws provision shall be invoked to permit the laws of any other state or jurisdiction." *Id.* at 27 of 111. Thus, the contract that IT Convergence seeks to invalidate, though it is not a party to the contract and Collard is not a party to IT Convergence's suit against Synaptis, contains a North Carolina choice of law provision.

California has a strong policy against non-competition agreements. Indeed, "with certain limited exceptions, California law renders void such [agreements]." *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 899 (1998); *see also Hill Medical Corp. v. Wycoff*, 86 Cal. App.4th 895, 900 (2001) ("California has settled public policy in favor of open competition."). North Carolina law permits non-competition agreements, so long as they are in

writing, based upon valuable consideration, reasonably necessary for the protection of legitimate business interests, reasonable as to time and territory, and not otherwise against public policy. *A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 402-3 (1983). In light of California's near ban on the use of covenants not to compete, the Court finds that, though the contract at issue contains a North Carolina choice of law provision, a California court would deem that application of the law of the North Carolina to IT Convergence's claim would be contrary to a fundamental policy of the state.

However, in the context of the enforcement of non-competition agreements, California courts have plainly held that California law does not apply to regulate recruitment or employment exclusively beyond the borders of California, even where the employer attempting to invalidate a non-compete is a California company. *Application Grp.*, 61 Cal. App. 4th at 895. Patrick Krause, President of IT Convergence, testified at his deposition that Collard originally was going to be hired to work in New York with IT Convergence's Vice President of Sales, but that "after meeting him and discussing his interest living in Nevada, working with our marketing team," IT Convergence decided that Collard would be a better fit working in Nevada working exclusively on UPK. Krause Depo. at 46-47 [DE 81-2]. Though IT Convergence is a California company, that Collard is not California employee is demonstrated by the fact that Collard is based in Nevada and by the fact that Collard appears to have a non-competition provision in his employment agreement with IT Convergence, which would likely be void if Collard is a California employee. Krause Dep. at 47-48.[2] For these reasons, the Court holds that California choice of law rules require that the Court apply North Carolina law to IT Convergence's California Business and Professions Code claim.

---

[2] Although Krause in his later declaration states that Collard's territory includes some of Northern California, Krause Decl. ¶6 [DE 80-3], the Court finds this to be of no import in determining whether Collard's employment is beyond the borders of California.

11

*2. IT Convergence's claims against Synaptis*

IT Convergence's first claim against Synaptis, for intentional interference with contract, requires it to show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach [or] disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998), *as modified* (Sept. 23, 1998) (internal quotation and citation omitted). "[T]he tort of intentional interference with performance of a contract does not require that the actor's primary purpose be disruption of the contract." *Id.* at 56.

IT Convergence's interference with contract claim is related to its employment contract with Collard, and not any contract it has with other third parties. [5:13-CV-852-BO DE 1-1 ¶¶ 32-42]. Synaptis contends that IT Convergence cannot show that it has suffered damages as a result of Synaptis' actions, and that its claim for intentional interference with contractual relations must therefore fail.[3] IT Convergence's President Patrick Kraus has declared that IT Convergence has suffered damage to its business as a result of limiting Collard's activities due to this suit. Krause Decl. at ¶ 9 [DE 80-3]. However, IT Convergence has come forward with no specific evidence of damages. *See e.g. Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013) (striking interference with contract claim for failing to allege specific evidence of damages). Krause has further stated at his deposition that he is unaware of any collateral damage suffered by IT Convergence with respect to Synaptis actions, including that IT Convergence has suffered no loss of business from Oracle. Krause Dep. at 64 [DE 81-2]. The Court holds that Krause's conclusory declaration that IT

[3] Synaptis mistakenly refers to IT Convergence's claim as one for intentional interference with prospective economic advantage, which is a distinct claim under California law. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1157 (2003).

Convergence has suffered damages is insufficient to create a genuine issue of material fact, and that summary judgment for Synaptis is appropriate on this claim.[4]

IT Convergence's second claim arises under California Business and Professional Code section 17200, which requires it to show that Synaptis engaged in an unlawful, unfair, or fraudulent business act or practice. *See also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The general rule in California is that covenants not to compete, in addition to other restraints on the practice of a profession, are void. *Wycoff*, 86 Cal. App.4th at 901; *see also* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). Thus, under California law, courts have held that § 17200 is violated where a party engages in a restraint of trade or business in violation of § 16600. *See e.g. Application Grp., Inc.*, 61 Cal. App. 4th 881, 908 ("use of a covenant not to compete [by a non-California business] in violation of section 16600 [is] a violation of section 17200 as well."); *see also Korea Supply Co.*, 29 Cal. 4th at 1143 ("Standing to sue under the UCL is expansive as well. Unfair competition actions can be brought by a public prosecutor or 'by any person acting for the interests of itself, its members or the general public.'") (citation omitted).

However, the Court has determined that North Carolina law applies to IT Convergence's claims, and thus it must determine whether IT Convergence has proffered sufficient evidence to resist summary judgment on an analogous claim for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes (UDTPA). As discussed above, a UDTPA claim requires a showing that the conduct engaged in was immoral, unethical, unscrupulous, or

---

[4] Synaptis would be entitled to summary judgment on IT Convergence's interference with contract claim even if considered under North Carolina law, as IT Convergence has proffered no evidence which would show malice. *See* section A. discussing Collard's claim for tortuous interference with contract above.

13

deceptive. *First Atl. Mgmt. Corp.*, 131 N.C. App. at 252. IT Convergence has proffered no evidence which would tend to support that Synaptis' actions were immoral, unethical, unscrupulous, or deceptive. Thus, as considered under North Carolina law, Synaptis is entitled to summary judgment on IT Convergence's unfair and deceptive trade practice claim.

II. MOTION TO COMPEL

Synaptis seeks to compel the deposition of Brian Koh, to compel mediation, and requests fees and sanctions. As it appears that Mr. Koh became no longer employed by IT Convergence as of August 26, 2014, the motion to compel is denied as moot. "Only a party to the litigation may, of course, be compelled to give testimony pursuant to a notice of deposition." *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996) (citation omitted). Because it has not granted Synaptis' motion to compel, the Court declines to award fees or costs to Synaptis. Fed R. Civ. P. 37(a)(5). The request to compel mediation is at this stage denied.

**CONCLUSION**

For the foregoing reasons, Synaptis' motion for summary judgment [DE 78] is GRANTED. Synaptis' motion to compel [DE 75] is DENIED. Because summary judgment has been entered on all claims in case 5:13-CV-852-BO, consolidation is no longer appropriate. The clerk is DIRECTED to enter judgment consistent with the foregoing in 5:13-CV-852-BO and to close the case.

SO ORDERED, this __18__ day of March, 2015.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

14